**Pamela Lea MAIER, Appellee,**

v.

**Verne ORR, Secretary of the Air Force, Appellant.**

**Appeal No. 84–985.**

United States Court of Appeals, Federal Circuit.

Feb. 4, 1985.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Robert A. Reutershan and Richard W. Oehler, Washington, D.C., Dept. of Justice, for appellant; Lt. Col. Bruce Houston, Dept. of the Air Force, Washington, D.C., of counsel.

Earle A. Partington, Honolulu, Hawaii, for appellee; Jack F. Schweigert, Honolulu, Hawaii, of counsel.

Before MARKEY, Chief Judge, and RICH and DAVIS, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a writ issued by the United States District Court for the District of Hawaii ordering the Secretary of the Air Force retroactively to reinstate Pamela L. Maier (Maier) on active duty in the United States Air Force with back pay (less that for 1977–1983 when Maier did not serve on active duty), back promotions, longevity pay, and other entitlements (including award of appropriate skill level and promotion points) which Maier would have received or earned if she had not been discharged in 1977. We reverse and remand with instructions to vacate the writ.

## BACKGROUND

Maier enlisted in the United States Air Force on February 19, 1970. On August 14, 1973, during the course of a physical examination at Hickam Air Force Base, Hawaii, she was given a smallpox vaccination.[1] On August 20, 1973, she developed a total body rash diagnosed as erythema multiforme, a severe allergic reaction to the vaccination. She was treated with medication, remained on active duty, and reenlisted for a term of four years on November 20, 1973.

In October 1976, Maier was due for revaccination. In view of her earlier experience, her case was referred to a Medical Evaluation Board (MEB), whose recommendation was reviewed by the Physical Evaluation Board (PEB). On February 9, 1977, the PEB found Maier not physically fit for duty because she could not receive a smallpox vaccination. It found that vaccination was not medically advisable in her case because of her past severe allergic reaction and recommended that she be separated with twenty percent disability and appropriate severance pay.

On February 15, 1977, at Hickam Air Force Base, Maier was counselled on the results of the PEB and her right to demand a formal hearing. Air Force Form 1180, contained in her medical records and filed in the district court, carries this executed-by-an-official counselling certificate:

> I certify that I have fully explained to the evaluee ... the legal results of the findings and recommended disposition of the PEB and of the case processing procedures and appeal rights as outlined AFM 35–4.

On the same day, Maier initialed and signed the form, initialed the box indicating that she concurred with the PEB's findings and recommendations and waived a formal

---

**1.** Air Force regulations make reception of smallpox vaccination and revaccination every three years a requirement of medical qualification for service.

hearing. Specifically, she checked the box stating:

I agree with the findings and recommended disposition of the PEB.

She did not check the alternative box stating:

I do not agree with the findings and recommended disposition of the PEB informal hearing and demand a formal hearing of the case.[2]

Maier accepted an honorable discharge, effective March 10, 1977, her 20% physical disability, and $7,600 in severance pay.

After working for the armed forces as a civilian for three years, Maier submitted an application to the Air Force Board for Correction of Military Records (board) on September 21, 1980, requesting that her discharge be voided and that she be reinstated retroactively with service credit, a retroactive promotion, and back pay, on the ground that the 1973 diagnosis was incorrect and that the Air Force had failed to employ other diagnostic procedures and to attempt a revaccination.

Maier offered letters from two doctors, giving the opinion that she could in 1980 receive small doses of the smallpox vaccine and that consultation with an immunologist might have led to a different diagnosis of her vaccination-reaction problem in 1977. The letters nowhere stated that she did not have or could not have had an allergic reaction to the 1973 vaccination.

The board obtained an advisory opinion from the Air Force Surgeon General. That opinion noted that the diagnoses in 1973 and 1976 were not necessarily incorrect, that Maier had exhibited no other allergic sensitivities, that her symptoms were consistent with erythema multiforme, and that neither letter submitted by Maier denied that the severe rash was in all likelihood an allergic reaction to the smallpox vaccination. In view of the potential that, if vaccinated, she would suffer a life threatening anaphylactic reaction, the opinion conclud-

ed that Maier was properly referred for MEB/PEB action and recommended that her request for retroactive reinstatement be denied.

The Surgeon General's opinion further noted that:

the applicant received and acknowledged full counselling on her case processing, procedures and appeal rights under the provisions of AFM 35–4 and could have demanded a formal hearing or submitted a rebuttal if she felt there was error or injustice. However, she fully concurred with the findings of the PEB. We find no evidence of error or irregularity in the processing of her case.

The board concluded that the decision to separate Maier in 1977 for physical disability was based on the best evidence available at the time and was not improper or erroneous. It further found that she was not miscounselled, that no regulatory violations or irregularities had occurred, and that she had concurred in the PEB-recommended disposition.

The findings of the board included:

"The decision to separate [Maier] on 10 March 1977, by reason of physical disability with entitlement to severance pay was based upon the best evidence available at that time, and in our opinion, the documentation that has been presented for our review does not persuade us to conclude that the decision of the Air Force was improper or in error. Additionally, our review of the physical disability proceedings in [Maier's] case does not reveal that she was miscounseled, or that any violations or irregularities existed. Therefore, we find that the applicant is not entitled to a correction of her military records as a result of error on the part of the Air Force.

Though it thus concluded that correction of her record was *not* justified on the basis of Air Force error, the board decision con-

---

**2.** If Maier had checked that box, she could have challenged the PEB decision and been granted a formal hearing, identified any criticisms she might have of the medical examination, ob-

tained a second opinion from a private specialist, or possibly have obtained a second opinion from another military medical facility.

tained the statement "sufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice." Noting that Maier apparently had a present ability to tolerate small doses of smallpox vaccine, and that to bar her reenlistment on the basis of a medical condition on her record, but no longer existing, would constitute an "injustice which warrants relief," the board recommended that "it is in the best interests of justice and the Air Force as well, to correct applicant's military records to the extent recommended."

The "extent recommended" enabled Maier's requested return to active duty, but not her requested reinstatement as of 1977, with full credit for time, back pay, allowances, and promotions in rank. On March 10, 1983, Maier reenlisted in the Air Force in the same grade she held when separated (E-4) and remains on active duty at present.

### District Court Proceedings

On July 19, 1982, Maier filed a petition for writ of mandamus in the district court, reciting 28 U.S.C. § 1361 as the basis for jurisdiction and seeking full back pay, constructive service credit, retroactive promotions, and longevity pay, and all other entitlements she would have received if she had never been discharged.

After a hearing, and focusing on the board's statement about "probable error or injustice", the court remanded the matter to the correction board on April 22, 1983, to reconsider whether the relief granted was adequate in light of that statement.

The board reaffirmed its former findings and recommendation, finding, on a second review of the entire record, that it "did not demonstrate the existence of probable material error or injustice." It explained that its earlier reference to an "injustice" concerned the injustice that would lie in barring her from reenlistment at the present time because she can now tolerate the smallpox vaccine. It specifically clarified that the "probable error or injustice" sentence in its earlier decision was *not* intend-

ed to indicate that the PEB decision or the manner in which Maier was discharged in 1977 was improper or unjust, or that she was entitled to retroactive reinstatement or similar relief. It noted that Maier's present toleration of small doses of smallpox vaccine does not establish that she was able to be vaccinated in 1977. It also reaffirmed that there were no violations of regulations or other error in the PEB proceedings or in the handling of this matter by the Air Force and that Maier had concurred in the PEB recommendation.

The board further explained:

the Air Force Physical Evaluation System was established to assist the Secretary of the Air Force to exercise his statutory authority, and designed to insure fair and impartial treatment for all members who are placed in these channels. Each case is considered individually, with due consideration given to the best interest of the member, as well as that of the Air Force. To fully protect a member's rights, each case is subject to extensive review at various levels within the Air Force to assure that the member receives every consideration to which legally entitled. Each of the boards and councils in the physical evaluation system are composed of well-qualified senior officers, including doctors, who have extensive background in evaluating the physical defects of Air Force members. Our independent review of the Physical Evaluation Board's (PEB), proceedings detected no error on the part of the Air Force, and revealed that the Air Force had indeed complied with its own regulations. The propriety of these proceedings was further substantiated through applicant's concurrence in the findings and recommendation of the PEB. The mere fact that [Maier] can now tolerate small doses of smallpox vaccine, does not, in and of itself, establish that she was physically qualified for worldwide duty in 1977. Additionally, since [Maier] received the same considerations that any other member of the Air Force would have received, and indeed present-

ly receives, and was treated no differently, a decision that she had suffered an injustice as a result of her discharge was not possible.

The case was returned to the district court and, on October 21, 1983, the court after a hearing orally ruled in favor of Maier. The court's opinion was stated from the bench and transcribed, the transcription of the entire opinion was included in the appendix presented to and fully considered by this court. The pertinent portions of the district court's opinion are:

Before the Air Force board was the administrative record, the opinions of Drs. Roth and McDonnel and an advisory opinion from the Air Force Surgeon General which stated that the Air Force had acted properly in 1977. On March 29, 1982 the board found by memorandum dated on April 6th, 1982 that sufficient relevant evidence was presented to demonstrate the existence of probable error and injustice. I repeat again: The Air Force board's own finding was that back in 1977 there had been demonstrated probable error and injustice. The Air Force board, however, stated that the decision was based on the best of the evidence available at that time and, therefore, all relief was denied, except the reenlistment.

\* \* \* \* \* \*

The three questions that the Court finds to be the relevant questions for decision by this Court today are, first, whether or not the federal court has subject matter jurisdiction over military discharge. Second, whether the petitioner has administratively exhausted all available remedies available to her and, if so, whether the decision of the Air Force board can be sustained under the substantial evidence rule.

Under 5 USC, Section 706(2)—and I go from A, B, C, D, E, and F sections—the determination [sic] of fact are reviewable by a federal court under Subsections A, E and F; the determination [sic] of law are reviewable under Subsections B, C, D, and the latter portion of Subsection A.

The substantial evidence test which is applied only when an action is subject to a formal hearing is applicable in this case where the Air Force has proceeded to formal hearing on this matter. Consequently, the substantial evidence test is appropriate to the Court's review on this matter. The respondent, however, argues the petitioner's claims are barred under the doctrine of sovereign immunity, this court lacks subject matter jurisdiction, and petitioner has failed to state a claim upon which relief may be granted.

\* \* \* \* \* \*

Now what is the scope of the federal Court's review? Again the Court will look to a Fifth Circuit case in this case Mindes vs. Seaman, as to the scope of federal Court's review of military matters, and finds therein that there is a two-part test that must be followed. First, that the plaintiff must allege a violation of Constitution, statutory or military regulation, and demonstrate that there has been an exhaustion of intraservice remedies. If this is satisfied, then the Court must balance the four factors test, as stated in Mindes—and for purposes of my oral ruling today the Court will not go into the four part test. The Court finds, therefore, under the Mindes decision jurisdiction is proper if the complaint alleges a constitutional, statutory or military claim. The petitioner must meet that first test before the Court can even refer to the balancing, second-part test. The Court finds that the petitioner in this case has satisfied the first step of the Mindes case since diagnosis in this case resulted in her wrongful discharge from military service and deprived her of the claims which she seeks today. And that this diagnosis was a result of error, negligence and failure to, as pointed out in Master Sergeant Tomlin's own affidavit, that they had not referred the matter to an allergy immunologist, as pointed out was clearly available at the time.

Monetary claims invoke federal jurisdiction over military claims relying on both Costa [sic-Koster?] vs. United States, the Court of Claims case, and Sanders vs. the United States. Here the board determined that the petitioner was not entitled to relief but, yet, the board allowed her to reenlist in light of probable error and injustice, as originally conceded. The Court looks to the Homcy case—H-o-m-c-y—another Court of Claims case in 1976 wherein it is said that where an applicant has convinced a corrections board to correct the military record it must grant him full relief, and cannot grant him only the so-called half a loaf relief. The Court, therefore, concludes that based on the respondent's own admission of probable error and injustice; that in the light of the unrefuted opinions of Dr. Roth and Lieutenant Colonel McDonnel, except as the self-serving conclusory unsubstantiated statement in the board's finding filed in court today, that there is no further issue as to facts and, therefore, the finding of the Air Force board for the correction of Military Records are [sic] unsupported by substantial weight of evidence available before it. The Court, therefore, grants full relief to the petitioner in this case. Mr. Partington, you may prepare the order. The Court will issue a writ of mandamus against the Secretary of the Air Force entitling your client to relief with respect to dating back of her reenlistment back to 1977, and to cause the Air Force to consider what promotions she would have been entitled to under those circumstances.

On January 26, 1984, the court issued a writ of mandamus, commanding the Secretary of the Air Force to retroactively rein-

state Maier on active duty with back pay,[3] retroactive promotions, longevity credit, and other entitlements which she would have received had she not been discharged in 1977.

### The Appeal

The government filed timely Notices of Appeal in the Court of Appeals for the Ninth Circuit and in this Court. It moved to stay proceedings in the Court of Appeals for the Ninth Circuit pending disposition of the appeal by this Court. On May 1, 1984, Maier moved to dismiss the appeals in both courts, arguing that the district court decision was not an appealable order. The government opposed that motion. In a May 24, 1984 order, this court deferred consideration of the motion for later consideration with the merits.

In a June 5, 1984 order, the Court of Appeals for the Ninth Circuit denied petitioner's motion to dismiss, concluded that this Court possessed jurisdiction over this appeal (citing 28 U.S.C. § 1295(a)(2)), dismissed the government's appeal, denied its motion to stay proceedings in that court, and granted leave to move for reinstatement of the government's appeal if this Court should conclude that it did not possess jurisdiction.[4] Maier has elected not to file a brief, but to rely on her motion to dismiss and a supporting Supplemental Memorandum. Leave to file that memorandum is herewith granted.

### Issues

(1) Whether this court has jurisdiction under 28 U.S.C. § 1295(a)(2).

(2) Whether the district court erred in granting the relief sought.[5]

---

**3.** Pursuant to the district court's order, Maier would receive back pay for the period she has been back on active duty representing the difference between her present grade, E-4 and her grade with back promotions, possibly E-6, and would receive, in all events, longevity pay based on continuous service since 1977.

**4.** The government moved for a stay of the district court's mandamus order pending appeal. On May 14, 1984, the district court deferred

ruling on that motion pending a ruling by the Court of Appeals for the Ninth Circuit. The district court did not mention the appeal in this court.

**5.** The district court correctly noted an absence of material fact issue and entered no fact findings. Its decision was thus one of law, and the provisions of Fed.R.Civ.P. 52(a) are not applicable.

## OPINION

### In General

■ No one has an individual right, constitutional or otherwise, to enlist in the armed forces, the composition of those forces being within the purview of the Congress and the military. *Gilligan v. Morgan*, 413 U.S. 1, 6, 93 S.Ct. 2440, 2443, 37 L.Ed.2d 407 (1973); *Lindenau v. Alexander*, 663 F.2d 68, 72 (10th Cir.1981). Maier's counsel noted before the district court that at the time of her discharge Maier's then current enlistment extension was due to expire in eight months, i.e., in November 1977, that "an enlisted member of the service, if entitled to reinstatement, is only entitled to reinstatement up to the end of the enlistment then being served," and that "this poses real problems for my client because if that relief is granted she'd have to pay back her severance pay and she would owe the government more money than she'd get."

The Air Force could have simply allowed Maier's enlistment to expire in November 1977 and declined to reenlist her. The board, having found no improper conduct in the 1977 actions of the Air Force, could equally have declined to recommend her reenlistment in 1982. Instead, the Air Force gave Maier, and she accepted, a 20% disability and $7,600 in severance pay on March 10, 1977, eight months before her enlistment expired, and the board waived age considerations in recommending her reenlistment in 1982. A federal court has now ordered the Air Force to do far more, i.e., to reenlist Maier as of 1977, with the promotions, longevity pay, and six-year earlier retirement she would have received if she had never been discharged.[6]

The armed forces discharge thousands of persons at hundreds of installations on any given day. Untold numbers of personnel and other decisions are daily made on the expectation that unchallenged discharges shall remain unchallenged. At least where, as here, established rules and regulations have been followed, federal courts should not succumb to the influence of hindsight when, years later, one who admittedly accepted and declined to challenge an honorable discharge has a change of mind.

### (1) Jurisdiction

· Because the appealed order involved a claim for monies (under $10,000) from the government, the district court's jurisdiction to enter that order was necessarily based at least in part on 28 U.S.C. § 1346(a)(2) (the Tucker Act), which grants the district courts jurisdiction over:

> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States....

■ We hold, therefore, as did the Ninth Circuit, that this court has exclusive jurisdiction over the present appeal under 28 U.S.C. § 1295(a)(2):

> The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—
> (2) of an appeal from a final decision of a district court ... if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title ...

Maier challenges the jurisdiction of this court on two grounds: (1) the district court's order is not final and thus not appealable, and (2) the claim is primarily for reinstatement as of 1977, for longevity credit, and only incidentally for money. Maier's arguments are without merit.

■ The appealed order of mandamus is dated January 25, 1984 and directs the Secretary of the Air Force to: (1) return the matter to the board; (2) instruct the board retroactively to reinstate Maier with back pay (less pay March 1977-March 1983), with back promotions she would have received, and with other entitlements (skill level and promotion points) she would have received if she had not been discharged in 1977. The ordered reinstatement would automati-

---

6. So shines a good deed in a naughty world. Shakespeare, *The Merchant of Venice*, V, i, 90.

cally result in longevity pay and earlier retirement potential. The order further commanded the Secretary to approve the board's action and return the matter to the district court for review no later than March 30, 1984.

Maier's argument that the order is not final until the board has acted and the matter has been returned to the district court is spurious. It rests entirely on an alleged uncertainty respecting what promotions Maier would receive and an unsupported notion that piecemeal appeals might be involved. The order, however, requires that the Secretary and board grant Maier the promotions she would have received if she had not been discharged. It also does far more. It commands the Secretary and the board to reinstate Maier as of 1977, with all entitlements stemming from that retroactive action. There is no warrant in reason, justice, or practicality for the concept that one subjected to the type of court order here involved must carry out the order, with all of its ramifications on the careers of other Air Force members affected by Maier's reinstatement, before challenging on appeal the validity of the order.

■ The order to reinstate Maier retroactively to 1977 with service credit, back pay, retroactive promotions, and other entitlements, is "sufficiently injunctive in nature to justify [this Court's] taking jurisdiction under Section 1292(a)(1)." *See Smith v. Eggar,* 655 F.2d 181, 184 (9th Cir.1981). Moreover, the order is "so fundamental to the litigation that both policy and common sense would dictate that [the Court should] assume jurisdiction under the rule of *Gillespie v. U.S. Steel Corp.,* 379 U.S. 148 [85 S.Ct. 308, 13 L.Ed.2d 199] ... (1945)." *Id.* at 184–85. All the benefits the Board is directed to determine and grant flow from the order that Maier be retroactively reinstated. Thus, the injunctive portion of the order would, if allowed to stand, determine with finality the legal issue raised in this appeal, i.e., whether the district court erred in ordering Maier's retroactive reinstatement with all entitlements. Further, consideration of the practical factors involved

in applying the finality requirement of section 1291, *see United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 170–71, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974); *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950); *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949); *Stone v. Heckler,* 722 F.2d 464 (9th Cir.1983); *Newpark Shipbuilding & Repair, Inc. v. Roundtree,* 698 F.2d 743, 746 (5th Cir.1983); *Ingalls Shipbuilding Division, Litton Systems, Inc. v. White,* 681 F.2d 275 (5th Cir.1982); argues for appellate review of the present order. That order, if erroneous and not reviewed by this Court, would result in a "totally wasted proceeding below." *Stone v. Heckler,* 722 F.2d at 464. The district court granted Maier "full relief" and has finally determined the controlling legal issue in this case, i.e., whether petitioner is entitled to retroactive reinstatement with all benefits flowing from that reinstatement. The order is therefore a final decision within the provisions of 28 U.S.C. § 1291.

Maier's assertions concerning the nature of her action are equally meritless. She sought full back pay at the outset, but obtained an amended order eliminating back pay for the period March 1977-March 1983 when she was not actually on duty. On that premise is based her argument that the district court's jurisdiction was based only on § 1361, the mandamus statute, and not on § 1346. Maier's argument is at best difficult to understand. She specifically sought elimination of back pay for 1977–1983 to reduce her money claim below $10,000. In addition, she specifically waived all damages in excess of $10,000, thus insuring jurisdiction in the district court under § 1346(a)(2). Before the district court she cited decisions of the Court of Claims with which the district court shared jurisdiction under § 1346(a)(2). The district court said, "Monetary claims invoke federal jurisdiction" and purported to rely on Court of Claims cases.

The district court mentioned but misread three Court of Claims cases: *Koster v. United States*, 685 F.2d 407, 231 Ct.Cl. 301 (1982); *Homcy v. United States*, 536 F.2d 360, 210 Ct.Cl. 332 *cert. denied*, 429 U.S. 984, 97 S.Ct. 502, 50 L.Ed.2d 595 (1976); and *Sanders v. United States*, 531 F.2d 490, 209 Ct.Cl. 62 (1974). In each of those cases, as here, plaintiff stated a claim which might result in recovery of money from the United States, thus establishing Court of Claims jurisdiction. *See Koster v. United States*, 685 F.2d at 411. In no case was jurisdiction premised on § 1361. Though the district court focused on the Court of Claims' reference to "half a loaf" in *Homcy*, the court in that case denied all relief in view of the statute of limitations and cited *Denton v. United States*, 204 Ct.Cl. 188 (1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1949, 44 L.Ed.2d 449 (1975), for the proposition that the statute of limitations can be tolled where the board failed to grant "the full relief it was compelled in law to grant." Nothing of record here indicates that the board was, in law or otherwise, compelled to grant Maier the full relief she requested. Indeed as above indicated, the board was in law at liberty to grant none.

■ Elimination of back pay for the period not in service does not change the nature of the present action. Because reinstatement as of 1977 will necessarily result in payment of some back pay and other government monies, Maier's action remains one for monetary relief under § 1346(a)(2), and an appeal of the district court's order in Maier's action is necessarily within the exclusive jurisdiction of this court under § 1295(a)(2).

In *Bockoven v. Marsh*, 727 F.2d 1558 (Fed.Cir.1984), this court determined that it had exclusive jurisdiction of an appeal from the United States District Court for the District of Columbia where the complaint named the Secretary of the Army as defendant and requested reinstatement, reconsideration of promotion, correction of records, and back-pay not to exceed $10,-000.

■ Maier contends that because her complaint premised jurisdiction entirely on 28 U.S.C. § 1361 this court was thereby ousted of jurisdiction. This court has held, however, that neither a plaintiff's nor a district court's mere recitation of a basis for jurisdiction may alter the scope of this court's statutory mandate. *See Chemical Engineering Corp. v. Marlo, Inc.*, 222 USPQ 738, 740, 754 F.2d 331 at 333 (Fed. Cir.1984). We look to the true nature of the action in the district court in determining jurisdiction of an appeal. *In Re Snap-On Tools Corp.*, 720 F.2d 654 (Order) (Fed. Cir.1983). A civil action for recovery of money from the United States cannot be disguised by couching it in mandamus terms.

> [I]t is by now firmly established that, where the prime effect of the complaining party is to obtain money from the Federal Government, this court's exclusive jurisdiction over nontortious claims (above $10,000) cannot be evaded or avoided by framing a District Court complaint to appear to seek only injunctive, mandatory, or declaratory relief against Government officials or the Federal Government.

*Hoopa Valley Tribes v. United States*, 596 F.2d 435, 436, 219 Ct.Cl. 492 (1979) (citations omitted).

In creating this court, Congress assigned it exclusive appellate jurisdiction of district court decisions involving claims for money from the government under § 1346(a)(2). Congress set forth its intent clearly in the Tucker Act and 28 U.S.C. § 1295(a)(2). Allowing the employment of mandamus and an appeal to a Regional Circuit would impermissibly create a vehicle for recovering money from the government by means other than those provided by Congress.

### (2) The Merits

During the hearings, the government argued the impropriety of mandamus in this case and the district court repeatedly stated that it did not intend to employ that extraordinary remedy. *Ex Parte Collett*, 337 U.S. 55, 72, 69 S.Ct. 944, 953, 93 L.Ed.

1207 (1949). Its election at the end to do so was a clear abuse of discretion.

■ Before a writ may properly issue, three elements must exist: (1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. *See Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir.1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). As above indicated, Maier had no right to reenlistment, and the Secretary owed no duty to reenlist her.

■ The district court's decision contains no findings tending to establish appropriateness of mandamus. No violation of any statute, regulation, or procedure is cited. No allegation appears of any denial of due process. That the district court misread the board's decision is reflected in the court's fixation on the board's statement concerning "probable error or injustice", in the district court's self-creation of a "right" of Maier to be examined in 1973 by an immunologist, and in its disregard of the board's explanation that its statement related only to justification for correcting the record and recommending Maier's reenlistment in 1982.[7] No basis is cited for the view that it was "wrongful" to discharge Maier without examination by an immunologist. Maier's medical evidence could at the most indicate a *possibility* that more

extensive testing and evaluation by an immunologist *might* have revealed a safe way to vaccinate her in 1977. That is not the question, however, when no statute or regulation required such steps.

Nowhere did the district court refer to or discuss the significance of Maier's having been counselled, or to her express waiver of the right to a hearing,[8] or to her election to acquiesce in her discharge on March 10, 1977.

Assuming, *arguendo*, that Maier was entitled to any relief, that set forth in the appealed order exceeded the authority of the district court. Federal courts have uniformly declined to order promotions, *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–540, 97 L.Ed. 842 (1953); *Reaves v. Ainsworth*, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225 (1911); *Koster v. United States, supra; Doggett v. United States*, 207 Ct.Cl. 478 (1975); *Brenner v. United States*, 202 Ct.Cl. 678 (1973); *Blevins v. Plummer*, 613 F.2d 767 (9th Cir.1980); *Arnheiter v. Chaffee*, 435 F.2d 691 (9th Cir.1970); *Dilley v. Alexander*, 603 F.2d 914 (D.C.Cir.1979), and to order relief beyond a current enlistment, *Austin v. United States*, 206 Ct.Cl. 719, 723, *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975).[9]

■ Mandamus was improper here for other reasons as well. Review of military

7. Apparently failing to note the board's conclusion that "a decision that [Maier] had suffered an injustice as a result of her discharge was not possible" and its explanation of its "probable error and injustice" statement as relating only to 1982, the district court was clearly in error when it stated:

The Air Force board's own finding was that *back in 1977* there had been demonstrated probable error and injustice. [Emphasis added.]

8. The district court's statement that "The substantial evidence test which is applied only when an action is subject to a formal hearing is applicable in this case where the Air Force has proceeded to formal hearing on this matter" finds no support in the record of this case. Nothing of record indicates that a formal hearing was conducted at any time by the Air Force.

9. The district court appeared to recognize some limitation on its jurisdiction to decide military

matters, but viewed its role as involving determination of the validity of the discharge, citing *Denton v. Secretary of the Air Force*, 483 F.2d 21 (9th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974). In that case, however, the discharge was *punitive* and *socially stigmatizing.* Maier was honorably discharged with severance pay. The district court's reliance on *Mindes, supra,* was equally misplaced. Having cited no constitutional or regulatory violation, Maier had not passed even the threshold of the test set forth in *Mindes,* and clearly had not passed the remaining portions of the test which the district court declined to discuss. Moreover, the district court misread the board's and the government's admission that Maier had exhausted her administrative remedies. That admission related to her approach to the board in 1980. The probative remedies, as the government told the district court, were those available to Maier in 1977, which she waived. Nowhere does Maier allege that any action of the Air Force at any time precluded her from obtaining

administrative decisions, if appropriate at all, is limited to the adequacy of due process accorded the petitioner. *Mindes v. Seaman*, 453 F.2d at 201–02. Not only did the district court, as above indicated, find no lack of due process, but Maier nowhere challenged the board's finding that "the applicant concurred with the findings and recommendations of the PEB which was sustained at all levels of review."

 Judicial review of the armed services' administration of personnel matters is necessarily and properly limited:

It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.

*Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983).

 Judicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm. "The Air Force is entitled to discharge an officer on grounds rationally related to the standards of fitness for retention in that branch of the service." *Denton v. Secretary of the Air Force*, 483 F.2d 21, 25 (9th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 30 L.Ed.2d 102 (1974). Maier adduced no evidence establishing that her discharge was not, on the record as it existed in 1977, rationally related to the established standards of fitness for retention in the Air Force.

 Thus the district court impermissibly intruded on an internal military matter, i.e., the decision to honorably discharge Maier on the ground that she was medically disqualified. The responsibility for determining physical fitness of service persons is that of the armed forces, not of the judiciary. *See Gilligan v. Morgan*, 413 U.S. at 10, 93 S.Ct. at 2445; *Orloff v. Willoughby, supra.* That caveat is particularly strong where, as here, there has been no allegation or finding of regulatory

the medical opinion on which she relied in

violation or constitutional infirmity in the discharge decision which Maier voluntarily accepted. Maier having chosen not to challenge her discharge at the time it was issued, by formal hearing or otherwise, the district court could properly have held that she had waived any right, if one existed, to challenge that military determination in a judicial forum and could have properly dismissed Maier's petition. *See Stewart v. United States*, 611 F.2d 1356, 1361, 222 Ct.Cl. 42 (1979); *Doyle v. United States*, 599 F.2d 984, 1000, 220 Ct.Cl. 285 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980).

## CONCLUSION

The district court misread the board's decision, erred in its consideration of the evidence of record, mischaracterized the nature of the action before it, impermissibly substituted its judgment, and exceeded its authority in ordering retroactive promotions and in ordering relief beyond termination of Maier's enlistment in November 1977. Issuance of the writ of mandamus thus constituted a clear abuse of discretion. The district court's decision must be reversed and the case remanded with instructions to vacate the writ.

REVERSED AND REMANDED.