**Gordon W. KRAUSS**

v.

**The UNITED STATES.**

No. 97–288C.

United States Court of Federal Claims.

May 7, 1998.

Thus, the parties may wish to consider reactivating discussions to settle the remainder, if not all, of this case.

John E. Corcoran, Jr., Newport News, VA, attorney of record for plaintiff.

Peter S. Levitt, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Lt. Christopher Donovan, Office of the Judge Advocate General, Department of the Navy, of counsel.

## OPINION

YOCK, Judge.

This military pay case is before the Court on the Defendant's Motion to Dismiss or for Judgment Upon the Administrative Record. The plaintiff has filed an opposition to the dispositive motions but has elected not to file a cross-motion. Oral argument was not requested and is deemed unnecessary. For the reasons set forth below, the Government's motion to dismiss is denied, the alternative motion for judgment upon the administrative record is granted, and the Complaint is to be dismissed.

### Factual Background

The plaintiff accepted appointment as an ensign in the United States Naval Reserve in October 1956. He served on active duty until March 1960, at which time he was released. Soon thereafter, he reaffiliated with the Naval Reserve, serving primarily in voluntary, nonpay billets until June 1985. In June 1985, the plaintiff was recalled to active duty for an estimated 18 months to serve as a member of the team that would manage the Navy's celebration of the 75th Anniversary of Naval Aviation. The plaintiff had attained the rank of captain by that time.

While serving on active duty as a captain, the plaintiff was twice considered for promotion to the next higher naval rank, rear admiral (lower half). He was not selected for promotion on either occasion. In April 1987, the plaintiff was informed that his failure of selection for promotion necessitated his release from active duty no later than August 31, 1987, unless he requested and received authorization to remain on active duty beyond that date. Captain Krauss requested to remain on active duty through September 1987, and that request was approved.

The plaintiff reported for his annual physical examination in August 1987. This examination was also designated as his separation physical. Captain Krauss requested full evaluation of 13 specific medical problems, which resulted in his retention on active duty beyond his September 30, 1987, separation date while medical studies and diagnoses were conducted. By November 1987, the plaintiff had been diagnosed with a nasal obstruction and obstructive sleep apnea. The plaintiff's release from active duty was deferred pending surgical treatment.

On November 30, 1987, Captain Krauss requested another extension of active duty until September 30, 1988, in order to serve either as a special assistant to the Director of Naval History or as a coordinator for the

1988 Naval Aviation Plan. The Chief of Naval Personnel denied the request.

On February 19, 1988, the National Naval Medical Command ("NNMC") requested that the plaintiff be extended on active duty for an additional six months to allow for surgical treatment of his medical conditions. On April 17, 1988, the NNMC convened a medical evaluation board, which recommended that the plaintiff's case be referred to the Central Physical Evaluation Board ("PEB") for disposition. On July 21, 1988, however, the NNMC requested that the Central PEB hold the plaintiff's case in abeyance.

The plaintiff was scheduled for surgery. However, in September 1988, before the surgery was performed, the plaintiff was diagnosed with anemia. The surgery was thus postponed until the anemia was brought under control.

In January 1990, the Chief of Naval Personnel directed that Captain Krauss be released from active duty no later than February 28, 1990. On February 23, 1990, Captain Krauss again submitted a request for retention on active duty for an additional two to four years, in order to assume a position as a coordinator for the Navy airship program. The Chief of Naval Personnel denied this request, asserting that the plaintiff must either request transfer to the Retired Reserves or be released from active duty.

On February 28, 1990, the Chief of Naval Personnel was informed that Captain Krauss could not be released from active duty because his separation physical examination could not yet be performed.

By May 1990, the plaintiff's anemia had been resolved. In August 1990, the plaintiff again submitted a request for retention on active duty, asserting that his services were essential to the Navy airship program but that he was willing to serve the Navy in any capacity. This request was also denied.

On October 11, 1990, the plaintiff underwent surgery to correct an obstruction in his nasal airway. On January 24, 1991, the plaintiff was tested for obstructive sleep apnea. The test revealed that Captain Krauss still showed indications of obstructive sleep apnea.

On February 13, 1991, the Chief of Naval Personnel directed that the plaintiff be released from active duty by April 1, 1991. On February 15, 1991, the Commander, Naval Military Personnel Command, wrote a letter to the Commandant, Naval District Washington, urging the Commandant to ensure that Captain Krauss executed his release from active duty orders by April 1.1991. On February 20, 1991, the Commandant, Naval District Washington, informed the plaintiff that his separation physical was scheduled for February 22, 1991, and directed the plaintiff to execute his release from active duty orders.

The separation physical was actually conducted on February 21, 1991. The examining physician noted on the Report of Medical Examination that the plaintiff suffered from obstructive sleep apnea syndrome, which had been relieved somewhat by the October 1990 surgery. The physician also found that the plaintiff had redundant soft palatal tissue, which could be treated by elective surgery. The physician deemed Captain Krauss "qualified for retirement and to perform all duties of his rank at sea and or on foreign shores."

The plaintiff underwent the elective surgery on March 29, 1991. The Chief of Naval Personnel extended the plaintiff's release from active duty date to not later than April 19, 1991. On April 19, 1991, Captain Krauss was released from active duty.

On April 19, 1994, the plaintiff filed a formal petition with the Board for Correction of Naval Records ("BCNR" or "Board"). In his petition, the plaintiff asserted that he had been improperly separated from active duty prior to completion of his medical treatment; that inaccurate and incomplete medical information had been used as a basis for his separation physical examination: and that he was improperly denied a medical board review and PEB evaluation prior to his release from active duty. He requested that his separation physical be declared invalid; that his release from active duty be voided and that he be restored to active duty for completion of medical treatment; and that his case be referred to a medical board and then to a physical evaluation board for disposition.

The BCNR considered the plaintiff's application for correction of his naval record and issued its decision on January 22, 1997. The BCNR denied the plaintiff's application, determining that the evidence submitted by the plaintiff was insufficient to establish the existence of probable material error or injustice.

The plaintiff filed his Complaint in this Court on April 18, 1997. The Complaint alleges that Navy officials violated the Navy's own regulations and abused their discretion in releasing the plaintiff from active duty without first referring him to a medical board. The Complaint further alleges that the BCNR violated law by determining the plaintiff's fitness for duty without convening a physical evaluation board and that the BCNR's decision to deny the plaintiff's petition was arbitrary and capricious, unsupported by substantial evidence, and contrary to applicable statutes and regulations. The plaintiff prays for all back pay and allowances to which he would have been entitled had the BCNR granted his petition and had he been retained on active duty, plus interest, attorney's fees, and costs; for an order declaring his release from active duty on April 19, 1991, to be invalid and returning him to active duty for a proper determination as to his fitness for duty; and for other such relief as the Court deems proper.

The defendant subsequently filed its Motion to Dismiss or for Judgment Upon the Administrative Record. The defendant contends that this Court should dismiss the Complaint because it presents a nonjusticiable issue: the fitness for active duty of a member of the armed forces. Alternatively, the defendant contends that the Complaint should be dismissed because federal law provides no entitlement to continued active duty to the plaintiff, who had twice failed of selection for promotion to flag rank and had served in the Naval Reserve for 30 years. Finally, the defendant argues that it is entitled to judgment upon the administrative record because the plaintiff cannot adduce clear and convincing evidence that the BCNR acted arbitrarily, capriciously, or contrary to law or that its decision was unsupported by substantial evidence.

## Discussion

 This Court follows well-established principles in reviewing military pay cases. As an initial matter, it is emphasized that "it is not the province of this court to factually determine, *ab initio*, whether plaintiff was unfit for military service at the time of his release." *Dzialo v. United States*, 5 Cl.Ct. 554, 561 (1984). It is also not the province of this Court to review a military action in the first instance when a plaintiff has chosen to bring the challenged action before the BCNR:

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

*Sanders v. United States*, 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979); *see also Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.1986): *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983). The plaintiff bears the burden of establishing such an infirmity in the BCNR decision with "cogent and clearly convincing evidence." *Dodson v. United States Gov't, Dept. of the Army*, 988 F.2d 1199, 1204 (Fed.Cir.1993); *Wronke*, 787 F.2d at 1576; *Strickland v. United States*, 36 Fed.Cl. 651, 655 (1996).

 In challenging a military personnel action, the plaintiff must also "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Doe v. United States*, 132 F.3d 1430, 1434 (Fed.Cir.1997). The applicable standard of review does not allow this Court to reweigh the evidence that was considered by the BCNR in reaching its decision, but rather to determine whether or not the BCNR's conclusion was supported by substantial evidence. *Heisig*, 719 F.2d at 1157; *Robbins v. United States*, 29 Fed.Cl. 717, 725 (1993). The standard of review is

ultimately a narrow one, and "[t]he court is not empowered to substitute its judgment for that of the [BCNR]." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974).

▪▪▪ The defendant urges this Court to dismiss the plaintiff's Complaint on the ground that it is nonjusticiable. In support of its position. the Government cites several cases which have held that a service secretary's determination of fitness for duty of a servicemember is beyond the competence of the judiciary to review. *See, e.g., Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953); *Murphy v. United States*, 993 F.2d 871, 874 (Fed.Cir. 1993); *Bunch v. United States*, 33 Fed.Cl. 337, 340 (1995), *aff'd*, 78 F.3d 605 (Fed.Cir. 1996). However, it is not the merits of the service secretary's determination of fitness for duty that is at issue here but rather the legal sufficiency of the BCNR's decision. It is well established that the legal sufficiency of a BCNR decision presents a justiciable issue, even if the challenged BCNR decision relates to a purely discretionary military decision like the fitness for duty of a servicemember. *See, e.g., Adkins v. United States*, 68 F.3d 1317, 1325 (Fed.Cir.1995); *de Cicco v. United States*, 230 Ct.Cl. 224, 228–29, 677 F.2d 66, 70 (1982); *Blum v. United States*, 231 Ct.Cl. 739, 741–42, 1982 WL 25212 (1982). This Court is competent to adjudge whether or not the BCNR's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

The defendant also argues that the Complaint should be dismissed "pursuant to the plain mandate of Title 10." In support of this position, the defendant cites 10 U.S.C. § 6389(c) (1988) [1] for the proposition that, by April 19, 1991, the plaintiff no longer had any right to remain on active duty. This statement might be true; however, the argument does not address the plaintiff's allegation that he was entitled to a medical board determination of his fitness for duty prior to being released from active duty. Consequently, the Court concludes that it would be improper to dismiss the plaintiff's Complaint on this ground.

▪▪▪ The defendant has also moved for judgment upon the administrative record. A motion for judgment upon the administrative record is measured by the same standards as a motion for summary judgment. Rule 56.1(a), Rules of the United States Court of Federal Claims ("RCFC"); *Nickerson v. United States*, 35 Fed.Cl. 581, 588 (1996), *aff'd*, 113 F.3d 1255 (Fed.Cir.1997). Judgment upon the administrative record is thus properly granted when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c).

The plaintiff contends that judgment upon the administrative record is not appropriate because genuine issues of material fact are in dispute regarding his fitness for duty at the time he was released from active duty in 1991. All of the disputed facts proffered by the plaintiff, however, were considered by the BCNR before it rendered its decision. The plaintiff does not contend that he has new evidence that would have changed the BCNR's assessment of his petition. Because "a *de novo* hearing in this court would merely be an unnecessary duplication of the Correction Board's hearing, the case is ripe for disposition by summary judgment." *de Cicco*, 230 Ct.Cl. at 230, 677 F.2d at 70; *see also Strickland*, 36 Fed.Cl. at 655–56.

The gravamen of the plaintiff's Complaint is that he was improperly denied a medical board, and potential referral to a PEB, prior to being released from active duty on April 19, 1991. It is the plaintiff's burden to show, with cogent and clearly convincing evidence, that he was entitled to a medical board prior

---

1. The pertinent portion of this statute provides:

"An officer in an active status in the Naval Reserve in the permanent grade of lieutenant commander or above * * * who is considered as having twice failed of selection for promotion to the next higher grade * * * shall be discharged from the Naval Reserve * * * if he has completed a period of total commissioned service equal to that specified below for the permanent grade in which he is serving:
* * *
Captain ........ * * * ........ 30 years."
10 U.S.C. § 6389(c) (1988).

to his release from active duty, and that the BCNR's refusal to return him to active duty so that a medical board could be convened was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. As discussed below, however, the plaintiff has not shown that he was entitled to a medical board prior to release from active duty or that the BCNR's decision violated the applicable standards.

In considering the plaintiff's application for correction, the BCNR reviewed the plaintiff's application, all material submitted in support thereof, the plaintiff's naval record, applicable statutes, regulations, and policies, an advisory opinion by a Navy pulmonary medicine specialist, and the plaintiff's rebuttal to the advisory opinion. The BCNR concluded, after its consideration of the entire record, that the plaintiff did not establish the existence of probable error or injustice. The BCNR noted that the plaintiff capably performed his military duties for more than three years after the diagnosis of sleep apnea was made; that senior officers who supported the plaintiff's efforts to remain on active duty concurred that the plaintiff performed his duties in an exceptional manner; and that the circumstances of the plaintiff's case gave rise to the presumption of fitness for duty defined in Secretary of the Navy Instruction ("SECNAVINST") 1850.4C ¶ 2056 (Mar. 8, 1990). The BCNR also was unpersuaded by the plaintiff's argument that he was released from active duty in violation of applicable laws and regulations and as a result of improper actions by senior naval personnel. Consequently, the BCNR denied the plaintiff's petition.

The plaintiff recites a litany of alleged errors in the BCNR's decision. The plaintiff contends that the decision was arbitrary, capricious, and unsupported by substantial evidence because the Board "relied on specious reasoning, on misleading, loose assertions, and on highly subjective, unsound speculation." The plaintiff further contends that the decision was contrary to law, asserting that 10 U.S.C. §§ 1201 *et. seq.* and SECNAVINST 1850.4C required the BCNR to convene a PEB prior to denying his petition. The plaintiff also asserts that the BCNR was

required to grant his petition because his release from active duty violated 10 U.S.C. § 1074(a). In addition, the plaintiff contends that the BCNR erred in ignoring evidence that his release from active duty resulted from a deliberate defiance of regulations by high-ranking naval officials. Finally, the plaintiff asserts that the Navy's decision to release him from active duty in the first instance was arbitrary, capricious, and contrary to law and regulations.

■ The Court finds no merit in the plaintiff's contention that the Board "relied on specious reasoning, on misleading, loose assertions, and on highly subjective, unsound speculation" in denying his petition. To the contrary. the Court concludes that the Board's decision was based on substantial evidence in the record. "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jennings v. Merit Sys. Protection Bd.*, 59 F.3d 159, 160 (Fed. Cir.1995). The BCNR considered evidence favorable to the plaintiff prior to reaching its decision. The Board reviewed the April 1988 medical board report that first called the plaintiff's fitness for duty into question. The BCNR also considered an October 1995 advisory opinion by a Navy pulmonary medicine specialist, who opined that "[p]atients with sleep apnea are unfit for duty based on clinical presentation." In addition, the BCNR had before it all other documents submitted by the plaintiff in support of his position.

However, the Board also had before it evidence that supported a finding of fitness for duty. Most obvious in this regard was the report of the plaintiff's February 21, 1991 separation physical. Although the plaintiff attacks this physical as ignoring the seriousness of his sleep apnea condition, the report plainly shows that the examining physician considered that condition, noted that it had been relieved somewhat by surgery in October 1990, and concluded that it did not physically disqualify the member for continued active service. Rather, the physician found the plaintiff to be "qualified for retirement and to perform all duties of his rank at sea and or on foreign shores." The plaintiff's mere assertion that the physician did not

give proper weight to his sleep apnea condition "does not overcome the presumption that [the examining physician] faithfully performed his duty." *de Cicco,* 230 Ct.Cl. at 232, 677 F.2d at 72.

In addition, the BCNR had before it fitness reports and recommendations of senior officers, dated after the diagnoses of nasal obstruction and sleep apnea had been made, that strongly endorsed the plaintiff's ability to perform all duties of his rank. Such documentation of the plaintiff's "ability to perform so well militates against a conclusion of unfitness." *Blum,* 231 Ct.Cl. at 742 (quoting *Dillon v. United States,* 229 Ct.Cl. 631, 634 (1981)). The Board also reviewed the plaintiff's requests to remain on active duty, submitted in November 1987, in February 1990, and in August 1990, by which the plaintiff attested to his own capabilities of performing the duties of his rank. The Board also considered applicable regulations, including SECNAVINST 1850.4C, which provides that "[w]hen a member continued to perform the normal duties of his or her office, rank, grade, or rating until commencing processing for non-disability retirement or separation, it shall be presumed that he or she was FIT FOR DUTY."

The record reveals that, although the plaintiff presented to the BCNR some evidence that might have raised questions regarding his fitness for duty, there was adequate relevant evidence in the record to support the BCNR's reasonable conclusion that the Navy did not err in finding the plaintiff fit for duty, and thus fit for release from active duty, in 1991. The standard of review does not permit this Court to reweigh the evidence considered by the BCNR and proscribes this Court from substituting its judgment for that of the BCNR when reasonable minds could reach different conclusions. *See Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir.1985); *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 814. Accordingly, this Court concludes that the decision of the BCNR denying the plaintiff's application for correction of his military record was supported by substantial evidence.

The plaintiff's next ground for error is that the BCNR violated 10 U.S.C. §§ 1201 *et seq.* and SECNAVINST 1850.4C by not convening a PEB prior to denying his petition. The Court finds no merit in this argument. The United States Code sections cited by the plaintiff pertain to separations due to physical disability. It is undisputed that the plaintiff was not released from active duty due to physical disability; rather, the plaintiff was released from active duty, in accordance with 10 U.S.C. § 6389(c), because he twice failed of selection for promotion to rear admiral (lower half). Consequently, the United States Code provisions cited by the plaintiff are irrelevant to the case at hand. Even if the provisions were applicable, nothing therein requires the BCNR to convene a PEB prior to denying a former servicemember's petition for correction of his military record. Likewise, SECNAVINST 1850.4C does not mandate that the BCNR convene a PEB prior to determining whether or not the Navy erred in concluding that a servicemember was fit for release from active duty. All that is required is that substantial evidence exist in the record to support the BCNR's affirmance of the Navy's fitness for duty determination. As discussed above, the record contains such evidence.

The plaintiff also asserts that the BCNR's refusal to grant his petition to void his release from active duty violated 10 U.S.C. § 1074(a). That provision provides that "a member of a uniformed service who is on active duty is entitled to medical and dental care in any facility of any uniformed service." The Court finds no merit in the plaintiff's argument. The administrative record shows that the plaintiff received medical care throughout the time that he remained on active duty. While 10 U.S.C. § 1074(a) creates an entitlement to medical treatment for those on active duty, nothing in that section or in any other statute or regulation cited by the plaintiff creates an entitlement to active duty for those receiving medical care.[2] Accordingly, the BCNR's refusal to

---

**2.** In this regard, it is noted that the administrative record reveals that the plaintiff continued to receive Government-funded medical care for his sleep apnea condition after his release from active duty, via civilian health care referrals and the Veterans Administration.

return the plaintiff to active duty for further treatment of his sleep apnea condition was not contrary to law or regulation.

As his next ground for error, the plaintiff alleges that the BCNR ignored evidence that high-level naval officials deliberately violated regulations in releasing the plaintiff from active duty on April 19, 1991. The record shows, however, that the Board did not ignore the documents submitted by the plaintiff but rather determined that the evidence did not establish the high-level conspiracy that the plaintiff alleged. The Board "was not persuaded that [the plaintiff's] release from active duty resulted from any improper actions of the then Chief of Naval Personnel, or that [the plaintiff was] released from active duty in contravention of applicable laws and regulations." This Court will not reweigh the evidence on this point. The plaintiff has presented no evidence to overcome the strong presumption that the members of the Board, in rejecting the plaintiff's argument, "discharge[d] their duties correctly, lawfully, and in good faith." *Doe,* 132 F.3d at 1434.

■■■■ Finally, the plaintiff contends that the Navy, in the first instance, violated law and regulations by releasing him from active duty without first convening a medical board to determine his fitness for duty. This Court does not review the Navy's action *ab initio,* but rather reviews the decision of the BCNR affirming the Navy's action. *See Sargisson v. United States,* 913 F.2d 918, 921 n. 4 (Fed.Cir.1990) (noting that this Court reviews the Correction Board's decision, rather than determining *de novo* whether or not the military complied with regulations); *Garcia v. United States,* 40 Fed.Cl. 247, 255 n. 4 (1998) (explaining that "the Court does not review the commanding officer's decision, but rather the decision of the BCNR affirming the commanding officer's decision."). The plaintiff is only entitled to relief if he shows, by cogent and clearly convincing evidence, that the Navy's decision to release him from active duty without first convening a medical board constituted plain legal error and that the BCNR arbitrarily and capriciously refused to correct that error. *Dodson,* 988 F.2d at 1204. The plaintiff has failed to make such a showing.

The plaintiff's statement of "plain legal error" is that the Navy did not convene a medical board prior to his release and that only a medical board could declare him fit for release from active duty. The plaintiff cites SECNAVINST 1850.4C, which states that "[t]here exists no authority to omit or postpone disability evaluation of physical impairment which renders questionable the ability of service members to reasonably perform the duties of their office, grade, rank, or rating." SECNAVINST 1850.4C ¶ 2013. In addition, the plaintiff cites the October 29, 1992 edition of the Manual of the Medical Department ("MANMED"), which provides that a servicemember must be referred to a medical board if a condition is found during a separation physical examination which is sufficient to disqualify physically the member for continued active service. MANMED Art. 15–29(2)(b) (Oct. 29, 1992).[3]

Substantial evidence exists to support the BCNR's conclusion that the Navy did not commit plain legal error when it released the plaintiff from active duty without first convening a medical board. The qualified physician, who conducted the plaintiff's separation physical, reported that the plaintiff's sleep apnea had been alleviated somewhat by surgery in October 1990. The physician's report, which is entitled to a presumption of correctness, concluded that the plaintiff was "qualified for retirement and to perform all duties of his rank at sea and or on foreign shores." In addition, by the time the separation physical was conducted. fitness reports and endorsements by senior officers revealed that the plaintiff had, in fact, reasonably performed the duties of his rank, grade, and office since being diagnosed with sleep ap-

---

3. Neither party has provided excerpts from the version of the MANMED that was in effect on February 21, 1991, the date of the plaintiff's separation physical. Because the defendant has not contested the plaintiff's reliance on the 1992 provision, and because all undisputed assertions are resolved in favor of the nonmovant when weighing a motion for summary judgment, the Court presumes that the provision relied upon by the plaintiff existed verbatim on February 21, 1991.

nea. The plaintiff's "ability to perform so well militates against a conclusion of unfitness," *Blum*, 231 Ct.Cl. at 742, and gives rise to the presumption set out in SECNAVINST 1850.4C: "When a member continued to perform the normal duties of his or her office, rank, grade, or rating until commencing processing for non-disability retirement or separation, it shall be presumed that he or she was FIT FOR DUTY." SECNAVINST 1850.4C ¶ 2056. The sum of this information constitutes substantial evidence to support the conclusion that, at the time of his release from active duty, the plaintiff did not have a physical impairment which rendered questionable his ability reasonably to perform the duties of his office, grade, or rank. Accordingly, substantial evidence supports the BCNR's conclusion that the plaintiff's release from active duty did not violate SECNA-VINST 1850.4C ¶ 2013 or MANMED Art. 15–29(2)(b) or otherwise constitute plain legal error.

In summary, no statute or regulation entitled the plaintiff to a referral to a medical board, as substantial evidence exists to support the conclusion that he was reasonably able to perform the duties of his rank, grade, and office at the time he was released from active duty. Therefore, the Navy's determination that the plaintiff was fit for duty, and thus fit for release from active duty, was not plain legal error that the BCNR was required to correct. The BCNR's decision to deny the plaintiff's application for correction of his military record was supported by substantial evidence and was neither arbitrary and capricious nor contrary to law. Accordingly, the defendant's motion for judgment upon the administrative record is granted, and the Complaint is to be dismissed.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is denied, the defendant's motion for judgment upon the administrative record is granted, and the plaintiff's Complaint is to be dismissed.

Each party is to bear its own costs.