**Edmund J. MASSA, Jr., Petitioner,**

**v.**

**DEPARTMENT OF DEFENSE,
Respondent.**

**Appeal No. 86–1404.**

United States Court of Appeals,
Federal Circuit.

March 25, 1987.

George F. Kelly, of Ryan & White, Springfield, Mass., argued, for petitioner; with him on the brief was Marcia Brayton Julian, of Ryan & White, Springfield, Mass.

Diane L. Donley, of the Commercial Litigation Branch, Dept. of Justice, Wash-

---

**3.** McIntyre's affidavit is dated December 20, 1983. His deposition was taken less than two months later on February 13, 1984.

ington, D.C., argued, for respondent; with her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, and Robert A. Reutershan; of counsel was John Monahan, of the Defense Logistics Agency, Boston, Mass.

Before MARKEY, Chief Judge, and NIES and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

Petitioner Edmund J. Massa, Jr. (Massa) appeals from the final decision of the Merit Systems Protection Board (Board), 30 M.S.P.R. 570, affirming Massa's removal from the Department of Defense (agency) based on his acceptance of gratuities from an agency contractor in the years 1981, 1982, 1983 and 1984. We reverse.

## BACKGROUND

Massa was employed by the agency as a supervisory quality assurance specialist, GS-12. He was required to certify to the agency annually that he would comply with the provisions of Defense Logistic Agency Regulation 5500.1 (Sept. 24, 1981). Part III, paragraph E. 2. of the regulation then in effect provided that:

> Except as provided in subparagraph 3 below, DLA personnel and their immediate families shall not solicit, accept, or agree to accept any gratuity for themselves, members of their immediate families, or others, either directly or indirectly or on behalf of any source that:
> (a) Is engaged in or seeks business or financial relations of any sort with any DoD Component.
> (b) Conducts operations or activities that are either regulated by a DoD Component or significantly affected by DoD decisions.
> (c) Has interests that may be substantially affected by the performance or nonperformance of the official duties of DoD personnel.

On August 29, 1984, as part of an investigation of certain agency employees, Defense Criminal Investigative Service special agents Scott Jackson and Stevan Little in-

terviewed Mr. Herbert Potoker, the treasurer of Saratoga Industries, a division of an agency contractor. Potoker gave a sworn written statement to Jackson and Little stating that in 1983 and in 1984 he had accompanied Massa and others on outings to the Saratoga Racetrack and Saratoga Raceway in Saratoga Springs, New York. On these occasions he arranged for the use of Saratoga Industries' box seats at Saratoga Raceway and for free passes to the Saratoga Racetrack. The statement does not mention whether Massa was aware that Potoker paid for the parking, obtained the free passes or arranged for the use of Saratoga Industries' box seats.

On September 11, 1984, Jackson interviewed Potoker again. Jackson's report of the interview stated that Potoker reiterated the contents of his prior sworn statement. Jackson's report adds that during the August 1984 outing to the Saratoga racetracks, Potoker said he paid for dinner and beverages for the group, including Massa, and that during the August 1983 outing Potoker paid for all expenses at both tracks. Potoker stated he was reimbursed by Saratoga Industries for his expenses incurred in entertaining agency employees at the racetracks.

Jackson and special agent Henri Baillargeon interviewed Massa on January 8, 1985. The report of the interview stated that Massa recalled attending the Saratoga racetrack and Saratoga raceway on August 17, 1983, with Potoker and others; the group ate at the Raceway's restaurant; and Massa did not pay for the expenses of visiting the tracks. The report also contains a statement that Massa "believed" that Potoker paid the expenses, but the impact of that statement is challenged. Massa also stated that he was familiar with the agency's standards of conduct and that he "would not have accepted or accompanied Potoker to the race tracks had he (Massa) not been invited to the tracks by his father, Ed Massa, Sr., the former [Defense Contract Administration Services Management Area] Deputy Commander."

On March 12, 1985, Massa received a notice of proposed removal from his super-

visor, Elia Pambuku. Massa was charged with five violations of agency standards of conduct. The first and second charges related to Massa's acceptance of gratuities from Potoker at the 1984 and 1983 racing outings. The third and fourth charges related to acceptance of gratuities from Potoker during similar outings in 1981 and 1982. The fifth charge was abuse of Massa's government position based upon inviting a subordinate to the racing outing of August 17, 1983.

On May 22, 1985, Colonel Donald Damm, commander of Massa's management area, issued to Massa a notice of removal based on the charges contained in the notice of proposed removal. Massa was removed on May 23, 1985. He appealed to the MSPB and a hearing was held on September 3, 1986.

At the hearing, the agency called as its first witness Herbert Potoker, who appeared pursuant to a subpoena. Potoker identified himself, claimed his Fifth Amendment privilege against self-incrimination, and refused to answer any further questions. The agency's next witness was John S. Seaver, Jr. a co-worker of Massa who attended the August 1983 racing outing with Massa and Potoker. Mr. Seaver testified in substance that he was invited on the outing by his father rather than by Massa and that during the course of the day various members of the party bought food and drink on a reciprocating basis. The agency's third witness, Scott Jackson, identified Potoker's statement and his reports of conversations with Potoker and Massa. These documents were introduced into evidence over the objection of Massa's counsel that they were hearsay. The agency's other witnesses, Elia Pambuku and Colonel Damm, testified to the processes by which they arrived at the decision to remove Massa based upon the statement and reports provided by Jackson.

In his defense, Massa explained that he often attended horseraces with his father. When he had visited racetracks with Potoker, he was invited by his father. He believed that expenses other than admission to the tracks were shared by those in at-tendance. Massa denied attending with Potoker in 1981 and 1982. Massa also explained that, prior to his discussion with Jackson, he had no knowledge of who had paid for admission to the racetracks during the racing outings in 1983 and 1984. He assumed that his father had paid for admission to the tracks because it was his father's custom to do so, but when Jackson explained that Potoker had borne the expense Massa did not challenge Jackson's statement. With respect to the statement in Jackson's report: "Massa believes that Potoker paid for the expenses associated with the racetrack outings nor was he surprised that Potoker made the arrangements and paid the expenses ...," Massa testified that while he said he believed Jackson when the agent informed him that Potoker paid the expenses, he had no knowledge of that fact prior to his discussion with Jackson. Transcript at 197–98.

The presiding official sustained the first four charges of accepting gratuities, but did not sustain the fifth charge for abuse of government position. The initial decision sustaining the charges of accepting gratuities was based entirely upon Potoker's written statement and Jackson's reports.

### ISSUE

Whether the presiding official's decision is supported by substantial evidence.

### OPINION

We review the Board's decision under the authority of 5 U.S.C. § 7703(c)(1982), which provides that the agency's action must be sustained unless it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

The substantial evidence test is particularly relevant here. Substantial evidence has been defined as:

"more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. Labor Board*, 305 U.S. 197, 229 [59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)]. Accordingly, it "must do more than create a suspicion of the existence of the fact to be established...." *Labor Board v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 [59 S.Ct. 501, 505, 83 L.Ed. 660 (1939)]. *Universal Camera Corp. v. Labor Bd.*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); *see also SSIH Equip. S.A. v. United States Int'l Trade Comm'n*, 718 F.2d 365, 379, 1 Fed.Cir. (T) 90, 105 (1983) (Nies, J., concurring).

In applying the substantial evidence test in this case, we look first to the elements of the charge the agency sought to prove and then to the quantum of proof required to sustain the charge. Each of the sustained charges stated that Massa "accepted" gratuities from government contractors. The applicable regulation specifically prohibits acceptance of gratuities from government contractors. Defense Logistics Agency Regulation 5500.1, pt. III, ¶ E. 2. (Sept. 24, 1981). *Compare* 18 U.S.C. § 201(g) (1982) (acceptance of gratuity by public official defined as *inter alia* accepting *or receiving* anything of value in connection with official acts). Proof of acceptance necessarily implies proof of the fact that Massa had actual or constructive knowledge that he was receiving something of value *from a contractor*. *Cf. Naekel v. Dep't of Transp.*, 782 F.2d 975, 980 (Fed.Cir.1986) (proposed removal for AWOL a nullity where person charged with AWOL did not know he was employed). The presiding official found that Massa "knew or should have known who was paying for the admission into the two racetracks." Initial Decision at 5. The precise question we must resolve is whether a reasonable person could find on this record that the agency proved by a preponderance of the evidence (5 U.S.C. § 7701) that Massa knew or

should have known that Potoker paid at least some of Massa's expenses. *See Hambsch v. Department of the Treasury*, 796 F.2d 430, 433 n. 2 (Fed.Cir.1986); *Lovshin v. Department of the Navy*, 767 F.2d 826, 844 (Fed.Cir.1985).

The agency's position that Massa knew Potoker paid for admission to the racetracks is based upon Potoker's hearsay statement and Jackson's two hearsay reports that Potoker paid and that Massa was not surprised by this information. Although it is well established that hearsay evidence may amount to substantial evidence to sustain an administrative determination, *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), such evidence must be "evaluated on a case-by-case basis to determine if the hearsay is inherently truthful and more credible than the evidence offered against it." *Sanders v. United States Postal Serv.*, 801 F.2d 1328, 1331 (Fed.Cir.1986). The presiding official apparently attempted to evaluate the probative value of the Potoker statement by applying the factors enumerated in *Borninkhof v. Dep't of Justice*, 5 MSPB 150, 156–57, 5 M.S.P.R. 77 (1981). The presiding official found Potoker's statement "entitled to considerable weight." Initial Decision at 5. Nevertheless, even if one views Potoker's statement and the other hearsay reports as probative evidence, viewing the record as a whole, it does not support a finding that Massa knew or should have known that Potoker paid Massa's expenses at the racetracks.[1]

■ Massa argues that although he admittedly *received* the benefit of admission to the racetracks, there is nothing in the record to prove that he *accepted* this benefit from Potoker. To sustain its charge of accepting gratuities from a government contractor, the agency must prove that Massa had actual or constructive knowledge that he was receiving something of value from a contractor. Massa testified that it was his custom to attend

---

1. Because of the inability of petitioner to cross-examine Potoker, on the record here Judge Nies would hold that Potoker's statement is entitled to weight only to the extent it is actually corroborated.

races with his father and that under those circumstances his father paid for the admission. This testimony was unrebutted. Nothing in Potoker's sworn statement or the other reports demonstrates that Massa knew or should have known that Potoker paid any part of the expenses for the outings. While issues such as knowledge and intent are often proved by circumstantial evidence, the agency must "do more than create a suspicion of the existence of the fact to be established." *Universal,* 340

U.S. at 477, 71 S.Ct. at 459. This it has not done.[2] The final decision of the Board is, therefore, reversed.

REVERSED.

2. In addition, there is *no* evidence establishing that Potoker and Massa even attended the 1981 and 1982 races together.