833 F.2d 1022
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Bobby WARD, Petitioner,
v.
UNITED STATES POSTAL SERVICE, Respondent.
 No. 87-3233
 United States Court of Appeals, Federal Circuit.
 October 7, 1987.
 
 Before NIES, BISSELL and ARCHER, Circuit Judges.
 BISSELL, Circuit Judge.
 
 DECISION
 
 1
 The final decision of the Merits Systems Protection Board, Docket No. SL07528610327, sustaining the removal of Bobby Ward, is affirmed-in-part, reversed-in-part, and remanded for mitigation of the penalty.
 
 OPINION
 
 2
 The agency removed Ward pursuant to a 'Notice of Proposed Removal--Crime.' The notice stated that '[t]here is reasonable cause to believe you are guilty of a crime for which a sentence of imprisonment can be imposed,' and listed three charges captioned: Charge 1--Failure to Account for Postal Funds/Stamp Stock; Charge 2--Failure to Account for Postal Funds/Stamp Stock; and Charge 3--Falsifying a Financial Report.
 
 Charges 1 and 2
 The Administrative Judge found:
 
 3
 The testimony of the inspectors, and the investigative documents in the record, demonstrate by a preponderance of the evidence that excess stock was placed into appellant's custody, and that he intentionally failed to report or account for it. This showing was not credibly rebutted or explained by appellant. Thus charges one and two, failure to account for postal funds/stamp stock, for excess stock sent to him in response to his August 14, 1985 and January 16, 1986 requisitions, respectively, are SUSTAINED. 5 U.S.C. Sec. 7701(c)(1)(B).
 
 
 4
 Petitioner's Appendix at A7-A8.
 
 
 5
 Ward contends that charges 1 and 2 are not supported by substantial evidence because the record does not justify the conclusion that Ward's failure to report excess stock was intentional and the administrative judge erred by failing to state the grounds underlying her finding that Ward's failure to report was intentional. Ward states that at the Board hearing the agency reformulated charges 1 and 2 in its closing statement by contending that Ward chose not to report the extra stock in order to convert it to his own use. Thus, Ward contends, the use of the word 'intentionally' by the administrative judge elevated charges 1 and 2 to automatically warrant conclusions of wrongdoing, such as embezzlement or the like.
 
 
 6
 At oral argument, counsel for the agency in a colloquy with the court made the following representations:
 
 
 7
 The intent involved here was a knowing and intentional failure to account. . . . We do not believe that this is the same standard as the intention to falsify the reports that has a two-pronged test to it--knowledge and intent to specifically defraud the government as this court has held in other cases. . . . The agency's intentional failure to account is an administrative intent which is a knowing intent. . . . There is not a fraud charge in these charges; it is the failure to account and the knowing failure to account.
 
 
 8
 Accepting the agency's characterization of charges 1 and 2, the precise question we must resolve is whether a reasonable person could find, on this record, that the agency proved by a preponderance of the evidence, 5 U.S.C. Sec. 7701(c)(1)(B), that Ward knowingly did not undertake to determine and report the amount of stamp stock received, but merely signed off on the basis of his requisition slip. See Massa v. Department of Defense, 815 F.2d 69 (Fed. Cir. 1987).
 
 
 9
 Ward admits that he failed to account for the excess stock. The agency argues that a finding that Ward knew the shipments contained excess stock is supported by the credited testimony of the Postal Service witnesses as to the contents of the sealed shipments, Ward's receipt of those shipments, and the identification of the excess stock, coupled with Ward's discredited explanations that he received no excess stock and that the auditors 'planted' the marked stock into his stock. Because this court has consistently held that credibility determinations are virtually unreviewable, Hambsch v. Department of the Treasury, 796 F.2d 430, 436 (Fed. Cir. 1986), we agree that the hearing testimony relied on by the administrative judge, together with the documentary record, constitutes substantial evidence to support sustaining charges 1 and 2.
 
 
 10
 Postal Inspector Tillman gave testimony, found credible by the administrative judge, about his purpose and actions in marking and adding excess stamp stock to the stamp order shipments of August 15, 1985, for Highland Park and other stations and the January 14, 1986, Highland Park shipment. That testimony was fully corroborated by Mr. Collier, the main post office employee who processed the stamp orders, observed Inspector Tillman's actions, and received the phone calls from the other station managers in August reporting their receipt of excess stamp stock. Ward admitted receiving and personally opening the stamp stock shipments and filling out stamp stock accounting forms for them. There is no dispute that Ward did not report the excess stamps, and the administrative judge failed to find credible Ward's explanation for the failure to report. Thus, the Board decision sustaining charges 1 and 2 is affirmed.
 
 Charge 3
 
 11
 The administrative judge's determination sustaining charge 3 is not supported by substantial evidence. In oral argument before this court, counsel for the agency stated that the standard of proof for this charge required evidence of 'knowledge and intent to specifically defraud the government.'
 
 
 12
 Although the language of charge 3 is less than clear, the administrative judge made no findings as to which form was falsified--3232-X or 1412/Stamp Accountability Recap Sheet. Moreover, the administrative judge made no findings supporting an intent by Ward to specifically defraud the agency. In addition, the record is devoid of any evidence to support a charge which is based on proof by a preponderance of the evidence that Ward had a 'knowing intent to specifically defraud the government.' Thus, the Board's decision sustaining charge 3 is reversed.
 
 Penalty
 
 13
 Because we hold that the Board's determination that the agency proved charge 3 by a preponderance of the evidence is not supported by substantial evidence, no elements of fraud remain in this case. Charges 1 and 2 evidence only that Ward was delinquent in the execution of his job responsibilites. Although his actions were more than mistake, inadvertence, oversight, or incompetence, they were certainly less than fraud or conversion. In light of Ward's 34 years of heretofore unblemished service to the federal government, we remand to the Board for a mitigation of the penalty.
 
 
 14
 NIES, Circuit Judge, concurring in part and dissenting in part.
 
 
 15
 I dissent from the majority's affirmance of charges 1 and 2. I agree with the majority that substantial evidence supports a finding that Ward did not do his job when he failed to report receiving the excess stamp stock. However, in my view, the finding that the acts of failure to account were intentional has no legally sufficient support in the record; indeed, no support.
 
 
 16
 The majority does not identify the evidence it relies upon as substantially supporting the Administrative Judge's (AJ) finding that Ward intentionally failed to account. The agency does not mention the issue of intent in connection with charges 1 and 2 in its brief to this court, and, thus, provides no clue with respect to what evidence the AJ relied upon. The only evidence which the AJ discussed that could possibly support the AJ's finding that Ward's acts were 'intentional' is the discovery of a shortage of $414.24 in Ward's main stock as a result of a Postal Inspection Service audit.
 
 
 17
 The total amount of stock handled by Ward during the approximate six-month period prior to the date of the audit was $191,688. When viewed in light of the AJ's additional finding of numerous shortages and overages[1] at the Highland Park Station shown in a previous audit, a shortage in Ward's stock, standing alone, cannot rise to the level of even circumstantial evidence of intent. The shortage may indicate Ward was incompetent; or it may be a normal discrepancy for a postal facility of its size.[2] But the shortage in no way supports an inference that the failure to account was intentional unless one also finds that Ward took or intended to take the property.
 
 
 18
 What disturbs me most about the majority decision is that, from the beginning, the agency charged Ward with committing the crime of 'Failure to Account for Postal Funds/Stamp Stock' for which 'a sentence of imprisonment can be imposed,' and maintained that position consistently before the board. The agency's opening and closing arguments at the board hearing include these statements, and none other, concerning intent:
 
 
 19
 [Ward's] actions violated the code of ethical conduct, and financial procedures within the Postal Service; also they are in violation of Federal Statutes.
 
 
 20
 . . ..
 
 
 21
 We submit . . . that the stamp stock was indeed mailed, as several people have testified. And Mr. Ward chose not to report it, and he chose to convert it to his own personal use.
 
 
 22
 . . ..
 
 
 23
 We further submit . . . that the reason we are here today [is because] Mr. Ward chose not to [report the excess stamp stock]. Mr. Ward chose to keep that stamp stock for himself . . ..
 
 
 24
 Hearing Transcript at 4, 142, and 146 (emphasis added). Thus, when the AJ found that the evidence demonstrated by a preponderance that '[Ward] intentionally failed to report or account for [the excess stamp stock],' that finding can only mean the AJ believed Ward did take the stock.
 
 
 25
 At oral argument before this court, in response to questions from the bench, the agency took a different tack, responding that Ward had an 'administrative intent' not to account for the stock. Government counsel defined such intent as follows: '[A]n administrative intent . . . is a knowing intent. . . . There is not a fraud charge in these charges; it is the failure to account and the knowing failure to account.' Thus, the agency seeks to sustain the charges on an entirely different theory from that advanced to the AJ. Without explanation, the majority accepts this new, less stringent, intent theory. The majority then holds that the charges so modified are supported by substantial evidence. However, that 'conclusion' is original fact-finding, the issue never having been raised before. Further, there is no evidence which supports even the watered-down charge and the majority points to none.
 
 
 26
 In any event, Ward was charged with and removed for the crime of failing to account for stock. There is no crime of 'failure to account' unless that act was the first step in a scheme to convert the stock to his personal use, as the agency sought to prove. The evidence of a shortage disclosed by the audit here is grossly inadequate to establish such intent. At most, the shortage may have created a suspicion that Ward took the stock, but such suspicion cannot rise to the level of substantial evidence that he did, in fact, take it. See NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939).
 
 
 27
 I concur in result that charge 3 was not established. Thus, I would reverse the board's decision in toto and order Ward's reinstatement with full backpay and benefits.
 
 
 
 [1]
 Uncontested evidence shows one overage as high as $1100.00. There appears to be only one previous shortage
 
 
 [2]
 On this record there is no way to know. Ward was denied discovery of other postal station shortages