**Jerry D. HARDY, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

No. 93–3101.

United States Court of Appeals, Federal Circuit.

Jan. 5, 1994.

---

12. At that time the DAR was designated the Armed Services Procurement Regulations (ASPR).

Steven L. Murray, Denver, CO, submitted for petitioner.

Melissa Pollack, Atty., Merit Systems Protection Board, Washington, DC, submitted for respondent. With her on the brief were Mary L. Jennings, Deputy Gen. Counsel and David C. Kane, Asst. Gen. Counsel; David M. Cohen and Thomas W. Petersen, Attys., Dept. of Justice, of counsel.

Before MAYER, RADER, and SCHALL, Circuit Judges.

MAYER, Circuit Judge.

Jerry D. Hardy appeals the decision of the Merit Systems Protection Board, No. DE315I920364–I–1, November 19, 1992,[1] in which the board held it had no jurisdiction to hear Hardy's appeal of the termination of his appointment to a supervisory position with the Federal Law Enforcement Training Center in Artesia, New Mexico, because he was a probationary employee at the time. We affirm.

## Background

On January 8, 1991, Hardy was assigned as the acting chief of the Artesia Training Division, Federal Law Enforcement Training Center, United States Department of the Treasury (agency). Prior to this, he had been a training instructor in the division. On May 5, 1991, Hardy was officially promoted to chief of the division, subject to a one year probationary period. On May 4, 1992, he was provided a letter signed by his supervi-

1. The initial decision of the Administrative Judge was issued on August 12, 1992. On November 19, 1992, the board denied Hardy's petition for review and the initial decision became the final decision of the board.

sor, David McKinley, which said that he would be demoted to his former position as of that day at 4:00 p.m. However, when he received the notice of removal, he was on approved annual leave from May 4 at 10:00 a.m. until May 5 at 4:00 p.m. Nevertheless, his removal was effected.

Hardy appealed to the board, which informed him that his appeal raised a question about jurisdiction and provided him an opportunity to address the issue. The board declined Hardy's request for a hearing because he had raised no facts, which if proved, would establish jurisdiction.

The board held that Hardy's probationary period would have ended on May 4, 1992, at 5:00 p.m., regardless of the fact that he had acted as chief for 117 days prior to his official promotion and was on annual leave that day. Because the board concluded that the agency removed him on May 4, 1992, at 4:00 p.m., before the probationary period ended, it concluded that there was no jurisdiction to hear the case. This appeal followed.

### Discussion

■ A probationary employee on initial appointment to a supervisory position who is removed to a nonsupervisory position has no right to appeal to the Merit Systems Protection Board unless the employee offers a non-frivolous allegation that removal was based on partisan political reasons or marital status. 5 U.S.C. § 7511(a)(1); 5 C.F.R. § 315.-908.[2] Hardy does not so allege; instead, he contends that he was not a probationary employee when he was demoted. To show this, and establish board jurisdiction, Hardy must prove that the agency's action did not become effective before the end of his probationary period. For the reasons set out below, we agree with the board that Hardy did not sustain this burden.

Ordinarily, an employee's one year probationary period ends on the completion of the employee's tour of duty on the last day before the anniversary date of the employee's appointment. See Federal Personnel Manual

(FPM) Ch. 315, § 8–4(d) (April 27, 1982). A "tour of duty" is an employee's regularly scheduled hours and days of duty. See FPM Ch. 296–33, Subch. 35 (January 8, 1993). Although the last day before his anniversary date was May 4, 1992, and his regularly scheduled tour of duty ended at 5:00 p.m., Hardy attempts to demonstrate that his probationary period ended at or sometime prior to 4:00 p.m. on May 4, 1992, the time at which the agency purported to demote him by the letter.

■ Hardy first argues that the probationary period ended on May 4, 1992, at 10:00 a.m., when he went on approved annual leave. He analogizes his case to those in which the board has held that where an employee's anniversary date falls on a Monday, and the employee has no tours of duty on Saturday or Sunday, the probationary period ends at the close of his or her tour of duty on Friday. See, e.g., Hawkins v. Dept. of Treasury, 52 M.S.P.R. 686 (1992); Ibrahim v. Dept. of Agriculture, 51 M.S.P.R. 269 (1991). Without passing on the correctness of these cases, we reject Hardy's contention that annual leave is the same as weekend and holiday periods.

Hardy does not dispute that his regularly scheduled duty hours were Monday through Friday from 8:00 a.m. to 5:00 p.m., with one hour for lunch from noon to 1:00 p.m. He was required to request annual leave for his absence on May 4 and 5, 1992, specifically because he was scheduled to work on those days. His taking of annual leave did not alter the fact that he was regularly scheduled to work until 5:00 p.m. on May 4, the day before his anniversary date. We see no error in the board's determination that Hardy's annual leave did not alter the end of his probationary period.

■ In the alternative, Hardy argues that the 117 days in which he acted as chief of the division prior to his official appointment to that position should be applied toward his probationary period. Office of Personnel Management regulations governing proba-

2. Section 315.908 provides:
(a) An employee who, in accordance with the provisions of this subpart, is assigned to a nonmanagerial or nonsupervisory position, has no appeal right.

(b) An employee who alleges that an agency action under this subpart was based on partisan political affiliation or marital status, may appeal to the Merit Systems Protection Board.

tion on initial appointment to a supervisory or managerial position refer to the Federal Personnel Manual for the conditions under which prior service is counted toward completion of a probationary period. 5 C.F.R. § 315.906 (1993).[3] Chapter 315 of the FPM covers career and career conditional positions generally, and subchapter 8 of that chapter governs probation. In turn, subchapter 8 refers to Appendix A for the rules applicable to prior service in connection with a probationary period. *See* FPM Ch. 315, §§ 8–2a, 8–2f (Sept. 19, 1989).

Hardy argues that the board should have applied the test derived from Appendix A, and found that his prior service was creditable because it was rendered immediately preceding his official appointment, was with the same agency and was "in the same line of work." *See* FPM Ch. 315, App. A–3c (Sept. 19, 1989). However, we believe the provisions of Appendix A are not applicable to Hardy. Subchapter 9 of chapter 315 specifically covers probation on initial appointment to a supervisory or managerial position. While subchapter 8 refers to Appendix A for determining when service may be credited, subchapter 9 makes no reference to Appendix A, but provides its own rules for the crediting of prior service. *See* FPM Ch. 315 § 9–8 (Sept. 27, 1985). Because subchapter 9 carves out a special set of rules for probation on an initial appointment to a supervisory or managerial position, its provisions govern in this case, and the more general ones in

subchapter 8 and, by reference, Appendix A, are inapplicable.

Section 9–8 deals with crediting service toward completion of the probationary period and provides in relevant part:

> d. **Temporary service prior to probation.** (1) Agency policy may provide for the crediting of temporary service in a supervisory or managerial position under temporary appointment, promotion or reassignment. Prior service under detail may be credited only when a detail to a supervisory or managerial position is made permanent without a break.

FPM Ch. 315 § 9–8d. Under section 9–8d then, whether temporary prior service may be credited toward the probationary period following initial appointment to a supervisory or managerial position is a matter of agency policy. Assuming that service in an acting capacity is "temporary service" within the meaning of section 9–8d, Hardy offers no evidence that agency policy allows the crediting of his service. To the contrary, the government submitted evidence that under agency policy, his prior service should not be counted because it was not in excess of 120 days and was in an acting capacity.[4] We see no error in the board's agreement that Hardy's prior service should not be counted.[5]

Finally, Hardy maintains that his probationary period ended at 4:00 p.m. on May 4, the same time the agency purported to remove him. In light of our determination that

---

**3.** Section 315.906 provides:

> (a) An employee who is reassigned, transferred, or promoted to another supervisory or managerial position while serving a probationary period under this subpart is subject to the probationary period prescribed for the new position. Service in the former position counts toward completion of the probationary period in the new position. If the former position was supervisory and the new position managerial, service counts in the manner prescribed by agency regulation.
>
> (b) *The conditions under which prior service is otherwise counted toward completion of the probationary period will be published in the Federal Personnel Manual.* [Emphasis added.]

Hardy does not assert that he was serving a prior supervisory or managerial position which was subject to a probationary period; accordingly, part (a) is inapplicable to him and his prior service counts only if provided for in the FPM.

**4.** Federal Law Enforcement Training Center (FLETC) Directive No. 64–00.A, ¶ 7.b (February 18, 1981) provides:

> Temporary service as a supervisor or manager immediately prior to the effective date of the probationary period requirement counts in the same way as service under a permanent appointment provided the individual was officially assigned to the position, e.g., a temporary appointment, promotion, or reassignment for a period in excess of 120 days. Service while on detail or in an acting capacity during the temporary absence of the regular supervisor or manager, does not count.

**5.** The board apparently confused the provisions of subchapter 9, section 9–8d with those of section 9–4b(2). Section 9–4b(2) deals exclusively with determining whether an employee is exempt from serving a probationary period under subchapter 9 because he or she was already serving in a supervisory or managerial position when the regulation became effective on August 11, 1979.

his regular tour of duty was scheduled to end at 5:00 p.m., and that his annual leave did not alter the end of his probationary period, we find this argument unavailing.

 Even if his probationary period ended at 5:00 p.m. on May 4, Hardy argues that his removal was not effective until after that time and date. He points to two factors in support—that his Notification of Personnel Action, Standard Form (SF) 50, was not signed by the personnel officer until June 4, 1992, and that he continued to be paid at the rate of the chief position for a period of time after May 4. Neither of these arguments carries.

To remove a probationary employee from an initial supervisory position, an agency official with the proper authority must notify the employee in writing that he or she is being demoted from a supervisory position for reasons of supervisory performance. 5 C.F.R. § 315.907(c) (1993). Hardy's notice of termination was signed by McKinley on May 4, 1992, and informed him that he would be demoted as of 4:00 p.m. that day for reasons of supervisory performance. Hardy contends that this did not become effective until it was "ratified" by the SF-50, which was signed by the personnel officer and approved on June 4. Because McKinley had the authority to remove Hardy, however, the SF-50 was not required to render the removal effective.

Authority to demote a probationary supervisory employee was delegated by the agency to that employee's immediate supervisor with concurrence by the next highest official in the organizational structure. Federal Law Enforcement Training Center (FLETC) Directive No. 64–00.A, ¶ 7.d. (February 18, 1981); FPM Ch. 315 § 9–6(c) (1993). McKinley was Hardy's immediate supervisor and the removal letter stated that the Deputy Director, FLETC, concurred in the action. By this writing, the agency, through McKinley, its authorized official, did all it had to do to remove Hardy effective May 4, 1992, at 4:00 p.m. No provision of the relevant statutes or regulations required the issuance of an SF–50 to render the removal effective. The ensuing SF–50 added nothing; it is merely an administrative record of the accomplished action. *See NTEU v. Reagan,* 663 F.2d 239, 243 (D.C.Cir.1981).

That Hardy continued to be paid at the higher salary is irrelevant. In any large organization, a personnel action triggers many administrative chores, ranging from processing the paperwork to alter an employee's salary, to making appropriate changes to a phone list. These chores likely involve many people and administrative levels. It defies common sense to expect that all such steps will be carried out simultaneously with the personnel action. As with the SF–50, the relevant question is whether the agency has taken all steps required by law to complete a personnel action, not whether every subsequent administrative detail has been fulfilled.

 Hardy also argues that he should have had a hearing on the issues of his tour of duty, McKinley's authority to remove him, and the completion of his probationary period. "There is no statutory requirement that the Board hold a hearing on the threshold issue of jurisdiction." *Wilson v. Merit Systems Protection Board,* 807 F.2d 1577, 1582 (Fed.Cir.1986). However, this court has held that a hearing is appropriate where a petitioner raises nonfrivolous issues of fact alleging jurisdiction which cannot be resolved simply on documentary evidence. *Id.* at 1583 (citing *Manning v. Merit Systems Protection Board,* 742 F.2d 1424, 1428 (Fed.Cir.1984)). The documentary evidence in this case, however, was ample to resolve the issues Hardy posits. And he was afforded all the procedural protections and process to which he was entitled as a probationary employee.

### Conclusion

Accordingly, the decision of the Merit Systems Protection Board is affirmed.

**AFFIRMED.**

---

Section 9–4b(2) says nothing about the crediting of prior service when an employee must serve a probationary period. That is governed by section 9–8. Despite this confusion, however, the board applied the right rule—that temporary service must be in excess of 120 days and in other than an acting capacity.