**Gerald L. HINTZ, Petitioner,**

v.

**DEPARTMENT OF the ARMY, Respondent.**

No. 93–3256.

United States Court of Appeals, Federal Circuit.

March 22, 1994.

---

W. Craig James, Skinner, Fawcett & Mauk, Boise, ID, argued, for petitioner.

Julie A. Shubin, Attorney, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for respondent. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Jeanne E. Davidson, Asst. Director. Also on the brief was Major James Rupper, Salt Lake City, UT, of counsel.

Before NIES,* MAYER, and LOURIE, Circuit Judges.

MAYER, Circuit Judge.

Gerald L. Hintz appeals the February 3, 1993, decision of the Merit Systems Protection Board, No. SE315I930012–I–1, in which the board held it had no jurisdiction to hear Hintz's appeal of the termination of his appointment as a Supervisory Staff Administrator for the United States Army because he was a probationary employee at the time. We affirm.

## Background

In June of 1991, while serving as an active duty reservist with the 1st Mobilization Battalion in Fort Carson, Colorado, Hintz learned that he would be discharged from active duty on September 27, 1991. He accordingly applied for a federal civilian position as Supervisory Staff Administrator (SSA) with the 321st Engineering Battalion in Boise, Idaho. He was interviewed for the position via telephone by three persons: 1) Thomas Chudik, then SSA for the 96th Army Reserve Command (ARCOM); 2) David Harding, SSA for the 162nd Support Group; and 3) Colonel Craig Larson, then Commanding Officer (CO) for the 162nd Support Group.[1] The CO of the 321st Battalion, Lieutenant Colonel James Stehr, did not participate in the interview process.

At the end of August, Harding called Hintz to inform him that he had been selected for the position. On September 24, 1991, Hintz was formally advised by letter, signed by Cheryl Sardorus, a staffing representative at the Civilian Personnel Office at Fort Carson, that he had been selected for the position and would enter duty on October 7, 1991. Prior to this official notification, Hintz had discussed his start date with Charles Stephenson, the Military Personnel Officer for ARCOM, who tried to move up his start date but ultimately informed Hintz that October 7 was the earliest date possible. In Septem-

---

* Circuit Judge Nies vacated the position of Chief Judge on March 17, 1994.

1. The hierarchy of these units was as follows: the 321st Engineer Battalion was subordinate to the 162nd Support Group in Salt Lake City, Utah, which was in turn subordinate to the 96th ARCOM, also located in Salt Lake City.

ber, Hintz also made a house-hunting trip to Boise, paid by the 96th ARCOM, and arranged to move his family and household goods at government expense.

On September 24, 1991, Harding again called Hintz and the two discussed Hintz's attendance at a Mobilization Readiness Review (MRR) in Salt Lake City the weekend of September 27–29. There was some dispute before the board as to whether Harding directed or merely encouraged Hintz to attend. However, Harding testified that he told Hintz he could not be paid for attending the MRR because October 7 was his start date.

After Hintz "outprocessed" from active duty at Fort Carson on the morning of Friday, September 27, he and his wife drove their two cars to Salt Lake City, arriving that evening. On Saturday, he attended various MRR meetings and, according to Hintz, he met with Colonel Larson, Lieutenant Colonel Stehr and Harding to discuss his new position. The next day, he attended another meeting before departing for Boise. He arrived in Boise on October 2. Hintz testified that on October 3 he went to his new office to set up, and on October 4 he worked. He formally reported for duty on October 7, 1991.

On October 1, 1992, Hintz received a letter from Major Phillip Burch, who had replaced Lieutenant Colonel Stehr as CO of the 321st Battalion, informing him that he would be terminated from his position as SSA as of the next day, October 2. The five page letter explained that Hintz was being terminated for performance reasons. A Standard Form 50 (SF–50), Notification of Personnel Action, was completed on October 12, 1992, showing an effective termination date of October 2, 1992.

Hintz appealed his termination to the board, which held that he was a probationary employee at the time of his termination. It rejected his assertion that his probationary period started no later than September 28, 1991, the time at which he attended the MRR in Salt Lake City. The board also disagreed with Hintz's arguments that Major Burch did not have the authority to remove him, and that his termination did not become effective

until memorialized in the SF–50 on October 12, 1992. The board concluded that because Hintz's probationary period began on October 7, 1991, and he was removed on October 2, 1992, while he was still a probationary employee, it had no jurisdiction. This appeal followed.

*Discussion*

■ Hintz has the burden of establishing board jurisdiction by a preponderance of the evidence. 5 C.F.R. § 1201.56(a)(2)(i) (1993). As a newly appointed employee in the competitive service, he was required to serve a one year probationary period during his first year of service. 5 C.F.R. § 315.801 (1993). Because he does not allege that he was terminated for preappointment, partisan political, or marital status reasons, Hintz must demonstrate that he was not a probationary employee at the time of his termination before he can invoke board jurisdiction. 5 U.S.C. § 7511(a)(1)(A)(i) (Supp. IV 1992); 5 C.F.R. § 315.806 (1993).

Hintz first argues that his probationary period began when he attended meetings at the Salt Lake City MRR on September 28, 1991, because, as he asserts, he was asked to attend the MRR by Harding and he was introduced as the new SSA of the 321st Battalion while he was there. He reasons that the September 24, 1991, letter from Sardorus constituted an unconditional letter of appointment and that his participation at the MRR was the performance of a federal function under the authority of this appointment. We do not agree.

Congress has provided the following definition of a federal employee:

(a) For the purpose of [Title 5], "employee", except as otherwise provided by this section or when specifically modified, means an officer and an individual who is—

(1) appointed in the civil service by one of the following acting in an official capacity—

.    .    .    .    .

(D) an individual who is an employee under this section;

. . . . .

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

5 U.S.C. § 2105 (1988). Hintz must show that he satisfied all three requirements before his service and, it follows, his period of probation may be considered to have commenced. *See Horner v. Acosta,* 803 F.2d 687, 691 (Fed.Cir.1986) ("The elements have independent significance and are strictly applied.").

Even if we were to agree with Hintz that the September 24 letter conferred on him the status of a federal appointee,[2] we cannot agree that he was authorized to perform a federal function before October 7, 1991. "Appointee status, by itself, does not offer [an individual] any of the statutory protection due federal employees." *National Treasury Employees Union v. Reagan,* 663 F.2d 239, 246 (D.C.Cir.1981) (Where plaintiffs received letters stating unconditionally that they had been selected for employment and should report for work on a certain date in the future, they nonetheless did not meet the requirements of subsections (2) and (3) of 5 U.S.C. § 2105(a)).

The board examined the relevant documents to see when Hintz was authorized to assume his official duties; the official documents are dispositive. The September 24 letter specified that he would "enter the posi-

tion on 10/7/91." His SF–50 specified an effective date of October 7, 1991, and twice stated that his appointment was subject to completion of a one year initial probationary period beginning on October 7, 1991.

The board also found that both Harding and Stephenson told Hintz that he would assume his duties on October 7, and that he did not receive compensation for any activities before that date. The board's conclusion that Hintz's attendance at the MRR and early arrival at his office were insufficient to establish that he was authorized to assume his duties before October 7, in light of the other evidence of record, is supported by substantial evidence and is neither arbitrary nor capricious. *See* 5 U.S.C. § 7703(c) (1988). The probationary period began on October 7, 1991.

■ Hintz's second argument is that Major Burch did not have the authority to terminate him, and that his removal was not effected until the SF–50 was signed by the Civilian Personnel Officer (CPO) on October 12, 1992. He contends that the CPO was the only authority authorized to terminate civilian personnel.

Based on the testimony of various officials, the board found that Major Burch had the authority to terminate Hintz, and that the subsequent issuance of an SF–50 by the CPO was not necessary before the removal was effective. The board also concluded that Army Regulation 140–315, Employment and Utilization of U.S. Army Reserve Military Technicians (July 5, 1985), cited by Hintz in support of his position, was not inconsistent with its finding that Major Burch had the appropriate authority to terminate him.[3]

---

**2.** The September 24 letter notified Hintz that "You have been selected and will enter the position on 10/7/91." However, the letter also stated that his appointment was "subject to receipt of DD214 & reserve certification." Thus, at the earliest, Hintz's appointment would appear to have been effective only when the requested documents were received by the agency. Because we hold that Hintz was not authorized to enter on duty until October 7, however, we need not decide the precise date his appointment was effective.

**3.** This regulation provided, in relevant part, that an Army Reserve commander's authority to su-

pervise military technicians included administering discipline and recommending separation for cause. AR 140–315 ¶ 4.e.(6)(e), (f) (July 5, 1985). Hintz argued that the word "recommending" implied that the commander had the authority only to recommend a termination, not to carry it out. But the preceding provision giving the commander the authority to administer discipline suggests that he could implement a personnel action, not merely recommend it. An agency's interpretation of its own regulation is given substantial deference, *see Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 149, 111 S.Ct. 1171, 1175, 113 L.Ed.2d 117 (1991) (citations omitted), and several officials

The board's conclusion was not arbitrary or capricious, was supported by substantial evidence, and was issued in accordance with applicable provisions of the law. *See* 5 U.S.C. § 7703(c). Accordingly, Hintz's termination was effective on October 2, 1992—before the end of his probationary period.

Last, Hintz contends that the board gave inconsistent evidentiary weight to the SF–50's issued upon his entry on duty and upon his termination. However, where an agency completes all steps required by law or regulation to execute a personnel action, an SF–50 adds nothing and "is merely an administrative record of the accomplished action." *Hardy v. Merit Systems Protection Board,* 13 F.3d 1571, 1575 (Fed.Cir.1994). It is the date of the actual personnel action reflected and memorialized in the SF–50 which constitutes the relevant evidence, not the date the SF–50 was issued.[4] In this case, the SF–50 issued upon Hintz's selection for the SSA position showed that the effective date on which he would assume his duties was October 7, 1991. In the same manner, the board looked to the effective termination date of October 2, 1992, as reflected by the SF–50 issued after Hintz's separation. The actual date those documents were processed was as irrelevant in determining the date of Hintz's termination as it was in establishing the date of his appointment.

### Conclusion

Accordingly, the decision of the Merit Systems Protection Board is affirmed.

*AFFIRMED.*

---

testified that Major Burch had the appropriate authority.

4. In some instances the issuance of the SF–50 may itself constitute the final step in effecting a personnel action, but this is not one of them.