NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LEE A. JONES,**
*Petitioner,*

v.

**DEPARTMENT OF JUSTICE,**
*Respondent.*

---

2012-3144

---

Petition for review of the Merit Systems Protection Board in No. SF315H110741-I-2.

---

Decided: April 16, 2013

---

JEFFREY S. BLANCK, of Reno, Nevada, for petitioner.

JANE W. VANNEMAN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director.

---

Before RADER, *Chief Judge,* O'MALLEY, and WALLACH, *Circuit Judges.*

PER CURIAM.

The Merit Systems Protection Board (the Board) affirmed the termination of Mr. Lee A. Jones. *Jones v. Dep't of Justice,* No. SF-315H-11-0741-I-2 (M.S.P.B. April 3, 2012) (*Board Decision*). Because the Board correctly found no harmful error, this court affirms.

I.

On September 14, 2008, Bureau of Prisons (BOP) appointed Mr. Jones to the competitive service position of Correctional Officer at the Federal Correctional Institution in Herlong, California. His appointment was subject to the completion of a one-year probationary period. As a Correctional Officer, Mr. Jones was responsible for maintaining safety and security of inmates and fellow staff members.

On March 19, 2009, Mr. Jones was videotaped playing basketball with inmates for about thirty minutes. After Warden Richard Ives of BOP was notified of Mr. Jones' activity, he referred the matter to BOP's Office of Internal Affairs (OIA) for investigation. Warden Ives was concerned that Mr. Jones' actions had violated BOP's standards of conduct, which require correctional officers to remain attentive to duty and fully alert.

On March 30, 2009, during an OIA investigation of the alleged misconduct, Warden Ives offered Mr. Jones a different competitive service position at Herlong. Mr. Jones began this new position as a Cook Supervisor on April 12, 2009. He formally accepted the position via email on May 2, 2009. Mr. Jones is a 30-percent preference eligible disabled veteran. According to BOP, Mr. Jones was selected from the certificate of eligibles because

he was the only one who met the requirements for the position.

Mr. Jones performed satisfactory work as a Cook Supervisor for the remainder of the summer. However, BOP terminated him by letter on August 7, 2009. The letter, signed by Warden Ives, cited Mr. Jones' "unsatisfactory conduct" of "play[ing] basketball with inmates" as justification for his termination. J.A. 292. His termination was effective as of the date of the letter.

Earlier, on April 2, 2009 as part of OIA's investigation, Mr. Jones voluntarily had given a sworn statement. He had stated that he was "not authorized to play basketball" and that doing so was "a bad decision." Aff. of Mr. Jones, J.A. 286. On April 6, 2009, OIA issued its final report regarding Mr. Jones' alleged misconduct. The report found sufficient evidence that Mr. Jones acted against policy by playing basketball. On April 17, 2009, OIA issued its final report. It found that Mr. Jones' "inattention to duty" constituted misconduct. J.A. 278.

Over two years later, in July 2011, Mr. Jones appealed seeking review of his termination. An administrative judge (AJ) found Mr. Jones had made a nonfrivolous allegation of Board jurisdiction under 5 C.F.R. § 315.806(c) and invited him to proceed. The AJ found Board jurisdiction under Section 315.806(c) and affirmed BOP's termination action.

Before the AJ, the agency initially argued that Mr. Jones was under the same one-year probationary period that began in September 2008. Thus, it argued that Mr. Jones' termination in August 2009 was for a *post-appointment* reason. The AJ rejected this argument. Instead, the AJ found that a new one-year probationary period began on April 12, 2009. *Board Decision* at 6-7. The government does not appeal this finding.

The termination letter cited unsatisfactory conduct (*i.e.*, playing basketball) that occurred *before* his appointment to Cook Supervisor; thus, the AJ found that BOP terminated Mr. Jones for a *pre-appointment* reason. *Id.* at 7. As a result, the AJ found that Mr. Jones was entitled to the procedural protections of 5 C.F.R. § 315.805. These protections include notice and an opportunity to respond. *See* § 315.805. Finally, the AJ found that Mr. Jones' right to appeal was limited to the conditions of Section 315.806(c), which did not include the merits of the agency's decision. *Board Decision* at 5, 8.

The record shows that the agency did not follow the procedures of Section 315.805 when it terminated Mr. Jones. Thus, the only issue was whether "the agency's failure to follow the procedures of section 315.805 was harmful error." *Board Decision* at 8. Consequently, Mr. Jones had the burden to establish, by preponderant evidence, that the error was harmful. *Id.*

After considering the evidence, the AJ concluded that Mr. Jones had not carried his burden. First, the AJ determined that Mr. Jones had some opportunity to respond when OIA first investigated the March 2009 incident. During the investigation, OIA interviewed Mr. Jones and allowed him to provide an affidavit. Second, the AJ relied extensively on Warden Ives' testimony. The AJ found the testimony "credible because [Ives] was unequivocal, forthcoming, and not evasive." *Id.* at 9. The AJ therefore affirmed the agency's decision to terminate Mr. Jones. Her decision became the Final Decision of the Board in May 2012, after neither party petitioned for review. Mr. Jones now appeals that decision. This court has jurisdiction under 28 U.S.C. § 1295(a)(9).

## II.

This court must affirm a decision of the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained with-

out procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). This court reviews the Board's conclusions of harmful error under the substantial evidence standard. *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1366 (Fed. Cir. 1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Massa v. Dep't of Def.*, 815 F.2d 69, 72 (Fed. Cir. 1987) (internal quotation marks omitted).

The Board correctly concluded that Mr. Jones was a probationer terminated for a pre-appointment condition. As such, the scope of his appeal to the Board was limited to the "ground that his termination was not effected in accordance with the procedural requirements" of Section 315.805, thus resulting in a harmful procedural error. § 315.806(c).

A procedural error is harmful if it was "likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." 5 C.F.R. § 1201.56(c)(3). Accordingly, the question before the Board was whether Warden Ives would likely have reached a different conclusion if the agency had complied with Section 315.805. *See* § 315.806(c). This section entitles a probationer to advance notice of the proposed termination, a reasonable time for filing an answer to the notice, consideration of the answer by the agency, and written notice of the agency's decision. § 315.805.

Additionally, having not become an "employee" as defined by statute, Mr. Jones could not challenge the merits of his termination before the Board nor can he before this court. 5 U.S.C. § 7511(a); s*ee* 5 C.F.R. § 315.806(c).

A.

According to Mr. Jones, because Warden Ives terminated him for an illegal reason (*i.e.*, *performance* during a prior probationary period) any lack of procedure is harmful as a matter of law. Mr. Jones, however, cites no authority to support this assertion.

Instead, Mr. Jones argues that a pre-appointment condition for termination has been limited to essentially two circumstances, neither of which applies to his case. First, when the probationer "fail[s] to disclose information" at the time of appointment (*e.g.*, possibility of federal indictment); and, second, when the probationer falsifies application materials. *See Beeson v. Hudson*, 630 F.2d 622, 624-25 (8th Cir. 1980) (failure to disclose FBI investigation); *Pope v. Dep't of the Navy*, 62 M.S.P.R. 476, 479 (1994) (falsification of cumulative Grade Point Average in application materials). Further, Mr. Jones argues that performance under a prior probationary period is entirely irrelevant to a decision of whether to terminate a probationer during a later probationary period.

Thus, according to Mr. Jones, because he made full disclosure and did not falsify his application materials, any procedural error was harmful because the original reason for his termination should have been irrelevant. In other words, the Board should have ignored the performance issues from his earlier probationary period and instead found harmful error.

This court does not agree with Mr. Jones' narrow view of the distinctions between termination for pre-appointment conditions and termination for unsatisfactory performance. While the two are treated differently under Sections 315.804 and 315.805, that treatment does not lead to Mr. Jones' unduly narrow reading. *Compare* § 315.804 (describing termination of probationers for unsatisfactory performance), *with* § 315.805 (describing termination for conditions arising before appointment).

Generally, the agency uses the probationary period "to determine the fitness of the employee . . . for continued employment." § 315.803. As the Board has previously found in discussing suitability under 5 C.F.R. § 731.202, "misconduct in prior employment that would have a bearing on efficient service in the position in question . . . may be the basis for finding an individual unsuitable." *LaPre v. Dep't of Justice*, 62 M.S.P.R. 329, 335 (1994). Additionally, as BOP correctly notes, this court has recognized the "great latitude [of federal managers] in removing probationary employees before they bec[ome] vested with the rights afforded tenured employees." *Bante v. Merit Sys. Prot. Bd.*, 966 F.2d 647, 650 (Fed. Cir. 1992). Here, keeping the "great latitude" in mind, this court concludes that Mr. Jones' prior misconduct was relevant to his suitability and fitness for continued employment as a Cook Supervisor.

First, as of April 12, 2009, Warden Ives was aware of only outstanding allegations of Mr. Jones' misconduct. Warden Ives had not yet received substantiation in the form of OIA's report. The Board correctly found Warden Ives' and Mr. Bradford Mackey's (BOP's Human Resource manager) testimony credible and persuasive. Each testified that it would have been imprudent to not hire Mr. Jones based on mere allegations of misconduct. *See* J.A. 94-95, 220-21.

Further, the Board found the testimony of Warden Ives and Mr. Mackey persuasive of the date Warden Ives received the report. They each testified that Warden Ives did not have the finalized report before April 12, 2009. They also described the normal BOP process in handling allegations of misconduct. The process involves OIA preparing and finalizing the report, forwarding it to human resources, and human resources sending it to Labor Management to determine a recommended discipline. Next, Labor Management would forward its recommendation to Warden Ives. Finally, Warden Ives

would consider Labor Management's recommendation before informing the employee of his discipline. This whole process could take up to 120 days. J.A. 95, 220. For these reasons, substantial evidence supports the Board's conclusion that Warden Ives may not have known the finality of the pending allegations against Mr. Jones when he accepted the position.

Second, once the OIA report was completed, Warden Ives was justified in considering its contents in considering Mr. Jones' removal. Indeed the report described his misconduct as "Inattention to Duty." As a Cook Supervisor, Mr. Jones was responsible for taking orders, overseeing inventory, etc. Beyond these duties, and similar to those of a corrections officer, Mr. Jones was responsible for supervising eighteen to twenty inmates in the kitchen as a Cook Supervisor.

## B.

Mr. Jones was terminated for a pre-appointment condition without proper procedure. Therefore, the question is whether the Board's conclusion of harmless error was supported by substantial evidence. *See* § 315.806(c). This court finds that it was.

In making its decision, the Board relied extensively on Warden Ives' testimony. Mr. Jones argues that such reliance amounted to an abuse of discretion by the Board because, according to Mr. Jones, Warden Ives was not credible. Specifically, he asserts that Warden Ives' credibility was impeached and that he admitted to perjury. Thus, according to Mr. Jones, Warden Ives' testimony should not be considered in our review for substantial evidence.

The AJ, however, was present during the questioning of Warden Ives, often interjecting to gauge Warden Ives' credibility. As such, the AJ was well positioned to make credibility determinations. This court finds those credibil-

ity determinations supported by substantial evidence and not inherently implausible. *Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1149 (Fed. Cir. 1997); *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002) (concluding that the credibility determinations of an AJ are given a high level of deference on review).

Three additional points further support the Board's finding of harmless error. First, Warden Ives understood the purpose of the probationary period and the importance of proper performance. He testified that the probationary period was "used to determine [probationers'] suitability for continuing their employment." J.A. 256. He also stated that he instructed new employees that they could not "mess up" during this time. *Id.* at 206.

Warden Ives also understood the importance of limiting personal relationships between inmates and guards. He explained that inmates are "violent and potentially very dangerous individuals." *Id.* at 241. Additionally, Warden Ives recognized and informed Mr. Jones that BOP's "Standards of Employee Conduct" require employees to be alert during duty hours. *Id.* at 360. Thus, Warden Ives reasonably concluded that playing basketball during duty hours was serious misconduct. *Id.* He considered it serious regardless of the situation in which it arose. Accordingly, the record supports a finding that Warden Ives would have otherwise removed Mr. Jones. *See id.* at 250-51, 255.

Second, when Warden Ives appointed Mr. Jones to the Cook Supervisor position he was only aware of allegations against Mr. Jones. Mr. Mackey had previously advised Warden Ives to not consider pending allegations of misconduct in making a hiring decision until the process was finalized. *Id.* at 94-95. Additionally, during the OIA investigation, Mr. Jones submitted an affidavit explaining his view on the allegations, in which he admitted to the misconduct. *Id.* The Board found that Warden Ives

would not likely have been persuaded differently if Mr. Jones had presented a full regulatory response. *See id.* at 250-51, 255. Mr. Mackey's advice coupled with the normal procedures at Herlong in handling disciplinary actions support the Board's finding of harmless error.

"Like any large organization, a personnel action triggers many administrative chores . . . [and] [i]t defies all common sense to expect that all such steps will be carried out simultaneously with the personnel action." *Hardy v. Merit Sys. Prot. Bd.*, 13 F.3d 1571, 1575 (Fed. Cir. 1994). Thus, it was reasonable for Warden Ives to wait for completion of the entire report before initiating action against Mr. Jones.

Finally, at the time BOP hired Mr. Jones for the Cook Supervisor position, he was the only one on the certified list of eligibles. *See* J.A. 92-95, 332. According to Mr. Mackey, Mr. Jones was at the "greatest level of preference among veterans and nonveterans." *Id.* at 94. Moreover, Mr. Mackey reasonably believed that alleged misconduct was no reason to "pass . . . over" Mr. Jones as an otherwise qualified candidate. *Id.* at 108. Thus, it was reasonable to hire Mr. Jones for the position, even in light of the allegations of misconduct. *See Hardy,* 13 F.3d at 1575.

The Board also considered Warden Ives' testimony as to BOP's decisions whether to terminate other individuals and found that testimony credible. He testified that even taking the situations of these others into account, his decision to terminate Mr. Jones would not have been any different. *See* J.A. 250-51, 255.

Accordingly, substantial evidence supports the Board's conclusion that BOP's procedural error was harmless. This court has considered the remainder of Mr. Jones' arguments and finds them unconvincing. Accordingly, the decision of the Board affirming BOP's termination of Mr. Jones is affirmed.

**AFFIRMED**